## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**THERESA HART,**                       )
                                        )
                                        )
**Plaintiff,**                          )
                                        )
**v.**                                  )   **Civil No. 07-0755 (RJL)**
                                        )
**DISTRICT OF COLUMBIA,**               )
                                        )
**Defendant.**                          )
_____)


## FILING OF ADMINISTRATIVE RECORD

Attached is an index of the administrative record, and the record documents themselves in this proceeding. Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor E.H.[1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_/s/ Edward P. Taptich_
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

_____
[1] Defendant has redacted the minor's name, date of birth, and social security number.

1

_/s/ **Amy Caspari**_
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
November 19, 2007                amy.caspari@dc.gov

Theresa Hart
v. District of Columbia
Civil Action No. 07-0755(RJL)

## INDEX OF RECORD

**Description**                                                    **Page**

Hearing Officer's Determination (HOD) dated 1/25/07          -    1

Due Process Hearing Attendance Sheet dated 1/18/07          -    6

Petitioner's Motion for Reconsideration of HOD, 2/7/07      -    7

Petitioner's Supplemental Memorandum dated 1/19/07          -    14

DCPS Disclosure Statement dated 1/10/07 w/att.              -    18

    DCPS 01- Student Evaluation Plan, 11/14/06             -    20

    DCPS 02- IEP, 11/14/06                                -    21

    DCPS 03- Behavior Intervention Plan, 3/8/06           -    35

    DCPS 04- MDT Meeting Notes, 11/14/06                  -    37

Petitioner's Disclosure Letter, EH1, dated 1/10/07 w/att.  -    40

    EH2- Letter compelling witnesses, 1/10/07             -    43

    EH3- Due Process Complaint Notice, 11/16/06           -    44

    EH4- DCPS Response to Due Process Complaint, 12/1/06  -    48

    EH5- Hearing Notice, 12/14/06                         -    52

    EH6- IEP, 11/14/06                                    -    53

    EH7- MDT Meeting Notes, 11/14/06                      -    68

    EH8- Functional Behavioral Assessment Plan, 3/9/05    -    69

    EH9- Speech-Language Evaluation, 4/3/06               -    72

EH10- Confirmation of meeting Notice, 10/31/06          -     77

EH11- Request for Official School Records, 12/18/06    -     78

Hearing Notice, 12/14/06                                              -     81

DCPS Response to Due Process Complaint, 12/1/06          -     82

Scheduling Memorandum, 11/16/06                            -     87

Due Process Complaint Notice, 11/16/06                    -     91

Transcript of Hearing dated 1/18/07                        -     95

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF E█████ H██

HEARING DATE: JANUARY 18, 2007

TRANSCRIBED BY
LEGAL PERSONNEL, INC.   (301) 277-5711

APPEARANCES

HEARING OFFICER:                        TERRY BANKS


ATTORNEY ADVISOR FOR
    DISTRICT OF COLUMBIA            MR. SAURABH GUPTA
    PUBLIC SCHOOLS

ATTORNEY FOR PARENT                     DOUG TYRKA

1    HEARING OFFICER: Okay. Today is January 18, 2006. This

2  is an Administrative Hearing for E███████ H█████ who was born on

3  █████████,1995. This Hearing is being conducted in accordance

4  with the guidelines and rights established by the Individuals

5  with Disabilities Education Improvement Act of 2004. The rules

6  of the Board of Education for the District of Columbia and DC

7  Code Title 38. My name is Terry Banks. As an independent

8  Hearing Officer, I am not an employee of the DC Public Schools.

9  I am not related to or an acquaintance of the student or parent.

10  I'm prepared to hear both parties and will act only on the

11  evidence presented during the course of this Hearing and

12  accordance with applicable laws, rules and regulations. This

13  Hearing is closed to the public. The matters discussed here

14  today are confidential and must be treated as such even after

15  the Hearing is completed. The Hearing is being recorded and

16  either party may request a copy of the disc or written

17  transcript of the proceedings by writing to the Student Hearing

18  Office. At this time I would like counsel to identify themselves

19  for the record.

20    Mr. Gupta: Good afternoon S Gupta, attorney for D.C. Public

21  Schools.

22    Mr. Tyrka: Good Afternoon Douglas Tyrka, attorney for the

23  parent.

1    HEARING OFFICER:  Good afternoon. Mr. Tyrka do you waive

2    the reading of the Hearing rights?

3    MR. TYRKA: Yes.

4    HEARING OFFICER: Both parties have submitted five-day

5    disclosure statements.  Does either party object to the

6    introduction of the other party's statement into evidence?

7    MR. TYRKA: I do have an objection.  DCPS has submitted an

8    IEP, which appears to me to be the version that was entered into

9    their computer system. I don't have a problem with that.  But it

10    also as their next disclosure, identifies as the Hagar

11    Intervention Plan, dated 3/8/06 and it not numbered, but I think

12    I am on the correct page.  Mr. Gupta may want to direct us.

13    There is a page here, oh I'm sorry, it is numbered.  I'm sorry

14    it is there.  DCPS 03. And the number is at the center at the

15    bottom of the page.

16    HEARING OFFICER: And so what is your objection to it?

17    MR. TYRKA: So we have this intervention behavior plan,

18    which again appears to be as it was entered into the computer

19    system. The intervention behavior plan is part of the IEP. I

20    don't have any objection to that and its version of it.

21    However, right underneath that we have this item that says

22    functional behavior assessment. Its date is 3/8/06.  This is

23    obviously not the actual evaluation.  And I'll just represent

4

1  that.  We don't have that evaluation.  I've never provided it.

2  That particular evaluation is not identified in the response to

3  the Complaint, which is our Number 4.  So my objection to this

4  is, I guess hearsay for the best evidence.  This is not the

5  original of the evaluations.

6       HEARING OFFICER: Mr. Gupta:

7       MR. GUPTA:  This is - we printed this off the student's

8  records from Encore.  This is a different Rock Creek - I believe

9  keeps a different type of IEP than what the normal DC forms are.

10  And in terms of whether this is the actual assessment or not, I

11  can't comment on that because I couldn't give you an answer

12  either way.  My presumption is this is not - this is not the

13  actual assessment. Because it doesn't - I've seen FBA's before

14  and they don't normally look like this, but then again, most

15  DCPS's IEP's don't normally look like this either.  I think that

16  could be, or that page is listed as petitioner's - as a witness

17  for the petitioner's so if this is an issue, then it all needs

18  to be cleared up and testimony from its page.

19       HEARING OFFICER: But it's your document. Right?

20       MR. GUPTA: It is but DCPS doesn't create it when the

21  student's at a private school. It's created by the school

22  itself.  And this was what on their Encore database for the

23  student.

1      HEARING OFFICER: So this IEP was developed at Rock Creek?

2      MR. GUPTA: Correct.  The parent – additionally petitioner's

3   submitted this IEP, an IEP from the same date. There is a hard

4   copy version, because it has the parental signatures. So let me

5   just compare it that to see if there is that page on it or not.

6      MR. TYRKA: We just trying to help, the IEP that I think –

7   well the IEP that we disclose is from November 06. I believe

8   that is also the case for DCPS. DCPS 02, it says date of last

9   IEP meeting, March 7th, and then date of this particular IEP is

10  like ink spots or something, but I presume it is November 1,

11  which is the same one we disclosed. However, that VIT and then

12  that FBA attached to it are from March 8th.

13     MR. GUPTA: So actually petitioners don't have those papers

14  but that doesn't mean it doesn't exist.  These are the IP's are

15  usually always at the end of the IEP.

16     MR. TYRKA: That's my point, after the IP and then IEP are

17  going to (inaudible) dates.

18     MR. GUPTA: If that doesn't matter – I mean--.

19     HEARING OFFICER: It's unattached to your November IEP

20  though, right?

21     MR. GUPTA: Are you asking me sir?

22     HEARING OFFICER: Yeah.

23     MR. GUPTA: This came from the same database, I separated

1  out separate documents because apparently at the November

2  meeting, they didn't update the IP's so therefore (inaudible)

3  has – the dates at date developed. It doesn't say – if they have

4  updated it then the new date developed would have the changed to

5  11/14, but they apparently didn't change anything in the IEP to

6  warrant a change of date.

7      HEARING OFFICER: All you are objecting to is the functional

8  behavior assessment, not the IVP?

9      MR. TYRKA: Correct.

10     HEARING OFFICER: I'll overrule it. I'm not sure how you are

11 prejudiced by it, if at all.

12     MR. TYRKA: I'll – the issue in this case is whether or not

13 a new FBA was ever done. Now I am looking at this document that

14 seems to indicate that one was done.  But this does not appear

15 to be the document.

16     HEARING OFFICER: I see what you are saying. That is one of

17 the issues, the FBA?

18     MR. TYRKA: That is one of the issues. And we did – and it

19 does not say in the response – well the response says that a lot

20 of the evaluations have been done, but it doesn't say what was

21 done when.  It's very vague.  The response is our number 4 and

22 paragraph number 1, states that an FBA has been done in the past

23 two years, but it doesn't – . We knew that one was done in '05.

1    There is no disagreement about that — so.

2         HEARING OFFICER: If one was done in '05 why would they need

3    to do another one in '06?

4         MR. TYRKA: Because the FBA itself stated that one should be

5    done within 6 months. The FBA itself is our number 8. I'll say

6    again, it does appear to be some indication that one may exist

7    somewhere. So I think as far relief, the appropriate thing would

8    be to order DCPS to produce it or fund it if they don't produce

9    it. But--.

10        HEARING OFFICER:  Where does FBA say it ought to be re-

11   done?

12        MR. TYRKA:  I believe it's on page 3.  Yeah the paragraph

13   immediately before interventions, under summary.  The second

14   paragraph is summary. Second sentence.  Further assessments

15   should be conducted after six months, evaluators adjusted.

16        HEARING OFFICER: I'm going to overrule the objection.

17   Subject to reconsideration of counsel, subject to raise it as we

18   proceed.

19        MR. TYRKA:  I'm sorry I didn't mention this earlier before

20   the Hearing Officer. I've decided — I also want to know our

21   number 11 is our record request to Sherry Walt who is the DCPS

22   LEA rep for Rock Creek requesting records including all

23   evaluations, and we did not get this evaluation in response to

1  the request.

2      HEARING OFFICER: Okay.

3      MR. TYRKA: I can have somebody testify about that, but I

4  don't think there is any dispute.

5      HEARING OFFICER: But this record request was post Complaint

6  filed.

7      MR. TYRKA:  Correct. Correct. That's relevant only the

8  evidentiary ruling.

9      HEARING OFFICER: Did you get a response to your records

10  request?

11      MR. TYRKA:  No.

12      HEARING OFFICER: All right, would you like to make an open?

13      MR. TYRKA:  Sure, I'll be very brief.  We are basing our

14  case on the documents. The first document is what we've already

15  reviewed which is the FBA, which directs that further

16  assessment, be done within 6 months.  Obviously this evidentiary

17  ruling affects the case but the Hearing Officer is aware of our

18  position on that and we contend that as far as we tell, DCPS has

19  not produced a full FBA following the one we disclosed as our

20  Number 8.  Given the fact that they have produced this computer

21  record indicating that one was done, the relief on that issue is

22  that we would ask that DCPS be ordered to produce the actual

23  evaluations to us and if they fail to do so that they fund the

1   (inaudible) within a timeline and if they fail to meet that

2   timeline, that DCPS be ordered to fund the evaluation.

3        HEARING OFFICER: Did you ask for an FBA at any time?

4        MR. TYRKA:  I don't believe so.

5        HEARING OFFICER: Okay. So we have kind of a vague statement

6   in a FBA that an assessment ought be done with 6 months and

7   that's the basis for your Complaint. You've never made a

8   request?

9        MR. TYRKA:  No, that's not the basis. I'm only starting

10  with the issue --.

11       HEARING OFFICER: That's one of the counts.

12       MR. TYRKA:  That's the basis -.

13       HEARING OFFICER: That's the count for your FBA.

14       MR. TYRKA:  That is for that claim, correct.

15       HEARING OFFICER: Why didn't you ask for an FBA if you

16  thought one was needed?

17       MR. TYRKA:  I cannot speak for Ms. Miller Skalsky sp?.

18       HEARING OFFICER: What do you mean you can't speak for her.

19  She is your witness.  She is your --/

20       MR. TYRKA:  I cannot explain her exact reasoning.

21       HEARING OFFICER: You filed the Complaint?  She didn't you

22  did.

23       MR. TYRKA:  Understood. Understood. I've stated the reasons

1    for our Complaint on that ground, on that claim. I cannot

2    explain exactly why Ms. (inaudible) did not request it. My best

3    guess is that she herself is not aware of that (inaudible).

4         HEARING OFFICER: Let me explain my frustration. My

5    frustration is this is supposed to be about providing services

6    to kids. Now about catching DC for not dotting 'i's" and

7    crossing "t's."  So, if you've got a competent attorney and a

8    competent educational advocate and they are aware of something

9    hasn't been done, and it's never raised with the school system,

10   I'm wondering why if they are serving their client.

11        MR. TYRKA:  I understand.

12        HEARING OFFICER: And the first time we see it is in the

13   Complaint.

14        MR. TYRKA:  I understand that frustration completely. So

15   that the Hearing Officer is aware this Compliant, I don't

16   normally go this far into what happened at my office.  This

17   Complaint was not filed originally for that reason. This

18   Complaint was filed for our other claim, upon review of the

19   file, the fact that the FBA had not been updated was separate

20   and hence it was added to the claim.

21        HEARING OFFICER: Okay.  Just a second.

22        MR. TYRKA:  So the Hearing Officer is aware, we would not

23   have been --. I'll leave it there.

11

1    HEARING OFFICER: Yeah. I'm not talking about you, but I've

2    seen filed over a whole lot less than this (laughter).  Now I

3    could lash at Mr. Gupta for I presume has no response and there

4    is no resolution meeting, but I'm trying to get a whole of that.

5    MR. GUPTA: There is a response in there.

6    HEARING OFFICER: Oh there is?

7    MR. GUPTA: At the resolution session.

8    HEARING OFFICER: Well at the resolution session, what was

9    done in respect to the FBA.

10   MR. GUPTA: It was offered to be done, let me look at the

11   notes so I can state it correctly. Says parents requesting DCPS

12   to fund FBA and convene MDT meeting within ten calendar days as

13   opposed to 60 (sixty).  So apparently we offered to fund it and

14   to convene meeting an MDT meeting within 60 days and they

15   rejected it for that.

16   HEARING OFFICER:  Go ahead Mr. Tyrka.

17   MR. TYRKA:  The other claim is that DCPS failed to - we can

18   calculate this in a few different ways. I'll give the Hearing

19   Officer the facts first. An MDT convened on November 14th '06 at

20   Rock Creek.  DCPS failed to attend.

21   HEARING OFFICER: The MDT meeting?

22   MR. TYRKA:  Correct.  IEP meeting.

23   HEARING OFFICER: HmmmHmmm.

1      MR. TYRKA:  DCPS was invited but failed to attend.  Rock

2  Creek was able to proceed with modifying the IEP, which they

3  did, based on a new speech and language evaluation.  However,

4  the team wanted to discuss compensatory education for DCPS's

5  failure to revise the IEP sooner regarding speech and language.

6  But Rock Creek could not go forward with that aspect of the

7  meeting because DCPS was not present.

8      HEARING OFFICER:  I don't understand.

9      MR. TYRKA:   Which part?

10     HEARING OFFICER: What you just said.

11     MR. TYRKA:  Okay.

12     HEARING OFFICER: The Comp Ed piece.  Why couldn't Rock

13 Creek devise an IEP that provided this child what the MDT team

14 thought the child needed?

15     MR. TYRKA:  They did.  They devised an appropriate IEP.

16     HEARING OFFICER: So what gives the child rights to Comp ed?

17     MR. TYRKA:  Well comp ed is separate and distinct from the

18 IEP.

19     HEARING OFFICER: Comp Ed is relief granted after a finding

20 of a denial of FAPE.

21     MR. TYRKA:  Correct.

22     HEARING OFFICER: So I don't understand.

23     MR. TYRKA:  So the claim is that because DCPS did not

1  review the speech and language sooner, about which there is no

2  argument.

3       HEARING OFFICER: Well- did the - did the MDT determine that

4  the child needed services for what - speech and language?

5       MR. TYRKA:  Correct. Yes.

6       HEARING OFFICER: Did they prescribe the appropriate

7  services?

8       MR. TYRKA: Yes.

9       HEARING OFFICER: I'm not understanding what right to comp

10  ed you have at a IEP meeting. Comp ed is what you have after a

11  finding of a denial of FAPE.

12      MR. TYRKA:  Why that's why I said this could be couched in

13  a different kind of - couple of different ways.  The factual

14  matter is that had DCPS would have been there, had DCPS been

15  there, there could have been a discussion about an agreement on

16  compensatory education.  As often occurs in this situation.

17      HEARING OFFICER: You see but I don't recognize that as an

18  appropriate discussion.  DC doesn't have to be at a private

19  school - they can delegate to the private school to do an IEP.

20  They don't have to be there.

21      MR. TYRKA:  Case law says the opposite.

22      HEARING OFFICER: No.

23      MR. TYRKA:  Case law in this district.

1       HEARING OFFICER: Says what?

2       MR. TYRKA:  Says exactly the opposite. Says DCPS can not

3  delegate their presence to a private school.  Now as it matters

4  - as it happens --.

5       HEARING OFFICER:  What's the case law?

6       MR. TYRKA: I can make a phone call and get the site, or I

7  can send it to you afterwards?

8       HEARING OFFICER: You can send it to me.

9       MR. TYRKA:  Okay.  So the Hearing Officer knows, I don't

10  say that lightly.  I checked on this just today.

11      HEARING OFFICER: Okay, so you're saying that DC can not

12  delegate authority to conduct IEP-s.

13      MR. TYRKA:  Well they can't delegate their obligation to be

14  part of the team.

15      HEARING OFFICER: The regs say opposite.  But well - their

16  ultimately responsible for providing FAPE. What the regs say is,

17  they can delegate to the private school the authority to develop

18  an IEP.  They cannot delegate their obligation to provide FAPE.

19  That is my understanding of the law.  So, I read that to say,

20  that they don't have to be at the meeting, but they are

21  responsible for insuring that FAPE is provided.  So, my point is

22  only the issue of speech and language services, it's up to the

23  MDT to determine what this child needs. Now you want to call it

15

1   comp ed and therefore obligate DCPS to be there to be a part of

2   the decision-making. I don't view that as being necessary. If

3   this child needs "x" to meet his needs for speech and language

4   services, the MDT ought to prescribe it. Whether DCPS is there

5   or not. And DCPS doesn't have the right to decline to provide

6   the services that the MDT determines that the child needs.

7      MR. TYRKA:  Well the compensatory services is separate from

8   the IEP?

9      HEARING OFFICER: No it's not.  It's not. It's not.  There

10  has been no finding of a denial of FAPE. So comp ed doesn't

11  apply to the IEP meeting.

12     MR. TYRKA:  I know that – I am familiar with the Hearing

13  Officer's view on the interaction between comp ed and the IEP.

14     HEARING OFFICER: Well if you got some case law that defines

15  a school system's obligation to provide comp ed, outside the

16  context of litigation, I'd like to know what it is.

17     MR. TYRKA:  Can you phrase that again?

18     HEARING OFFICER: If you have some case law on a school

19  system's obligation to provide comp ed outside the context of

20  litigation, outside the finding of a denial of FAPE.  Is there

21  come case law that says DC has to provide comp ed when there has

22  been no denial of FAPE.

23     MR. TYRKA: And that's why – I started off by telling the

16

1    facts and saying that it could be couched in a couple of

2    different ways. That's why as a technical matter, the violation

3    is failure to participate in the IEP meeting.  But I wanted the

4    Hearing Officer to be aware that as a practical matter, the

5    effect of that --.

6        HEARING OFFICER: (inaudible).

7        MR. TYRKA:  Well we have failure to timely develop an

8    appropriate individualized education?

9        HEARING OFFICER: Which they can delegate.

10       MR. TYRKA:  Well but they are responsible for--.

11       HEARING OFFICER: Which one?

12       MR. TYRKA:  Developing an appropriate one, regardless.

13   That's our Number 3.

14       HEARING OFFICER: Right. So I don't' have any problem with

15   you arguing that the IEP is inappropriate as far as

16   insufficiency of speech and language services. But you want to

17   also say DCPS had to be there and it had to provide comp ed. I

18   don't know the justification for either argument.

19       MR. TYRKA:  I'm saying that DCPS was obliged to participate

20   in a discussion that the parent wanted to have regarding.

21       HEARING OFFICER: Fine. You're going to provide me case law

22   on that.  I don't know that to be the law.  All I know is that

23   child is entitled to an appropriate IEP. My understanding of the

1    regs is that can be delegated to a private school.

2         MR. TYRKA:    Understood.

3         HEARING OFFICER: The private school that you asked for, who

4    you thought could provide better services than DCPS in the first

5    place, so why you want DCPS at the table I'm not quite sure. But

6    be that as it may, the child is entitled to appropriate speech

7    and language services. We have no disagreement there.  What we

8    are disagreeing with is, what you call it.

9         MR. TYRKA:   I don't know if we even need to disagree about

10   that. Because I am willing to put my argument in terms that the

11   Hearing Officer prefers.

12        HEARING OFFICER: It is not what I prefer.  I'm just telling

13   you what my understanding of the law is.  If you provide me with

14   case law to the contrary.  What I am saying is you have no right

15   to have DC there. You have no right to comp ed. That is my

16   understanding of the law. Now if you got some case law to the

17   contrary, I'll take a look at.  What I am agreeing with you on,

18   is that the child is entitled to appropriate speech and language

19   services.  That's what we agreed on.

20        MR. TYRKA:   Okay.

21        HEARING OFFICER: And if  -- and if --- and if - for

22   instance, hypothetically. The child didn't get a year of speech

23   and language services and the MDT knew that, they should take

1    that into account when they are developing the child's speech

2    and language services.

3        MR. TYRKA:  Understood.

4        HEARING OFFICER: It's not comp ed.

5        MR. TYRKA:  Understood, but that is not the approach they

6    take. I mean --.

7        HEARING OFFICER: I don't care what approach they take.

8    Then it's up to you to say the IEP is inappropriate because they

9    did not adequately deal with this child's unique needs. Don't

10   come in here talking to me about comp ed when there is no

11   violation of FAPE.

12       MR. TYRKA: That is exactly where we are, and that's why I

13   said, we can couch this as the Hearing Officer to fit the

14   Hearing Officer's perspective on this.

15       HEARING OFFICER: Couching bothers me.  Well I'm just

16   telling you what I consider to be the law.  If that helps you

17   put on your case, then that's fine.

18       MR. TYRKA:  I'm just letting you know the arguing

19   alternatives.  When I say couch, I mean arguing alternatives.

20       HEARING OFFICER: No, I don't think you're prepared to make

21   that argument.  Your second argument is that DC had to be there.

22   That's what I thought your second argument was.  And I don't

23   agree with that either.

1      MR. TYRKA:  I understood.  And the Hearing Officer

2   understands that I'm sending him a case on that.

3      HEARING OFFICER: Do you have a third couch then? (laughter)

4      MR. TYRKA:  We do. I beg to the position on the couch.

5      HEARING OFFICER: Number 3.  Wait a minute, let me put this

6   down, DCPS obligated to participate in a IEP meeting.  Okay.

7      MR. TYRKA:   Number 4. We can split this into two branches.

8      HEARING OFFICER: Comp ed.

9      MR. TYRKA:   We can split this into two branches.  One

10  branch is dependent upon DCPS's being - not being allowed to

11  delegate its requirement to be there.  This could be that

12  branch. Is contingent upon DCPS having to be there.  If DCPS has

13  to be there, there failure to be there prevented - depending on

14  how you look at it, either (1) a full discussion of commensurate

15  education or (2) a full discussion of the child's needs to

16  incorporate past denial of services, which I think is how the

17  Hearing Officer is inclined to do. So that would one arm - one

18  position on the couch. The second one would be simply that the

19  MDT failed to consider all the student's needs including needs

20  as they related to prior denial of services, and that by itself

21  is a violation, for which DCPS remains responsible.  Now which

22  arm applies had to do with the question of whether DCPS has to

23  be there. If DCPS didn't have to be there, then the team they

1   delegated failed in their duty to the student.  If DCPS did have

2   to be there, then the team was correct in faulting DCPS

3   directly.

4        HEARING OFFICER: The team is correct in what?

5        MR. TYRKA: That if DCPS did have to be there, then the team

6   correctly stated that they could not go forward with the

7   discussion because of DCPS's absence. DCPS did not have to be

8   there, then the team that DCPS delegated failed to fully concern

9   the child --.

10        HEARING OFFICER: Is that what you are telling me that the

11   team did not consider what?

12        MR. TYRKA:  First page of our Number 7.  Last paragraph.

13   So the last three paragraphs, the third to last identifies the

14   speech and language that would be provided. The last paragraph

15   says the new evaluation that was completed on April 3rd '06, his

16   speech hours were increased, et cetera, et cetera. The parent

17   advocate is prepared to move forward, however DCPS wasn't

18   (inaudible)to move forward. Parent advocate are requesting

19   independent tutors, so there was a specific request for services

20   related to the missed speech and language and that request was

21   not addressed at the meeting. Again, for one reason or the

22   other, whether DCPS was supposed to be there and they weren't or

23   DCPS did not need to be there in which case, (inaudible).

1       HEARING OFFICER: All right.

2       MR. TYRKA:  For that reason we're asking in addition to

3   whatever the decision is in the FBA issue that DCPS be ordered

4   to convene an MDT meeting immediately to determine whether and

5   what additional services may be necessary in full consideration

6   of the missed speech and language in the past.

7       HEARING OFFICER: Okay. Mr. Gupta.

8       MR. GUPTA:  In terms of the FBA, DCPS also has, I guess you

9   can say a bifurcated position. One is that as you pointed out

10  earlier that one was never requested. And two is we feel that -

11  going along with that the work needs another assessment in

12  another 6 months. It's very vague.  What kind of assessment, it

13  didn't say specifically FBA.  And actually the third position

14  also is that there is no evidence that the MDT team accepted

15  that recomendation.  This was done - the FBA was done in 2005,

16  apparently we are going forward on the document on the

17  petitioner's side, so there is no documents to show. No MDT

18  notes from 2005 or any - or actually any MDT notes except

19  November of 2006 that show that the MDT team agreed with the FBA

20  and agreed with the recommendations and decided to incorporate

21  that line of it, especially.  And then moving on to apparently

22  the failures of the 11/14/2006 FET meeting, along with the fact

23  that we agree with the Hearing Officer said that we believe DCPS

1  can delegate its authority to the private school. If you look at

2  parent's exhibit 10, well for one, DCPS wasn't invited to the

3  meeting or there is no evidence in the record that we were

4  invited, maybe they were invited but they just didn't include

5  the letter of invitation. But parent's exhibit 10 is

6  specifically states that this meeting – that the purpose of this

7  meeting was to develop, review IEP, including consideration of

8  ESY and the other box checked is review of evaluation or re-

9  evaluation information.  As you can see from this document, they

10  are clearly is another box that says discuss comp ed.  And that

11  box is clearly not checked.  So, in this also – this

12  confirmation was sent out Ms. Arvette Page who is the special

13  education coordinator of Rock Creek Academy. We believe it's a

14  bit disingenuous to say that that meeting was – all the other

15  arguments aside that part of the agenda of that meeting was to

16  discuss compensatory education, when the meeting confirmation

17  notice clearly states to the contrary.  And I would – and I'm

18  not quite sure what issue number 4 is addressing.  Failure to

19  timely (inaudible) on that special education related services. I

20  can only assume that means that there was 6 or something – I'm

21  sorry 8 month delay in reviewing the speech and language

22  services. Yeah, that's obvious – speech and language was done I

23  believe in April of – parent's disclosure state it was done on

1    4/3/06.  I'm not sure there is evidence of when that was given

2    to DCPS.

3        HEARING OFFICER: I'm sorry what was done on 4/3/06.

4        MR. GUPTA: 4/3/06 speech and language was conducted.

5        HEARING OFFICER: Speech and language eval?

6        MR. GUPTA: Yeah.  And that's the same eval at the 11/14

7    meeting or that Rock Creek Academy reviewed.  It also – that

8    same eval says 60 minutes per week.  And as you can from the

9    IEP, I believe it calls for an hour and half.  So,  either I

10   read that speech and language wrong and it meant to say 60 extra

11   minutes from what he's already getting or the IEP just granted

12   him extra ½ hour which – and in that sense would take care I

13   believe is the comp ed issues that were raised (inaudible).

14       HEARING OFFICER:  What about that last part Mr. Tyrka.

15       MR. TYRKA:  That the IEP gives more than the evaluation

16   recommended?

17       HEARING OFFICER: On the issue of speech and language

18   services, what is – what gives rise to the right to comp ed?

19       MR. TYRKA:  The fact that the review was late.  So it was

20   not reviewed between April and November.

21       HEARING OFFICER: When were they provided?

22       MR. TYRKA:  Evaluations.

23       HEARING OFFICER:  He said there is no showing of they got

1    it in April.

2         MR. TYRKA:  It's a DCPS evaluation.  It's Rock Creek.

3         HEARING OFFICER: It's speech and language evaluation?

4         MR. TYRKA: Yeah I mean, DCPS, as counsel knows, DCPS has a

5    contract with Rock Creek that all the students there –

6         HEARING OFFICER: Because they have a contract with Rock

7    Creek doesn't mean that DCPS got a Rock Creek evaluation.

8         MR. TYRKA:  Well then we got a different issue.  I mean

9    either DCPS had it or should have had it.

10         HEARING OFFICER: Well DCPS has to get it, the question is

11    when did DCPS get the evaluation.  Where is the evaluation?

12         MR. TYRKA:  It's number 9. DCPS is responsible for

13    providing FAPE.  So either DCPS correctly, you know got their

14    act together with Rock Creek to get the evaluation done to get

15    their hands on it, or they failed to in which case, they failed

16    their duty on that one.  I'm in the minute of the doubt that

17    they had it the same time Rock Creek.

18         HEARING OFFICER: Okay, anything else?

19         MR. TYRKA:  Regarding the amount of services, it doesn't

20    appear to be correct that the IEP has more services than is

21    recommended in the eval. However the point is that the hours

22    were increased as a result of the review of the eval. Therefore,

23    the delay in the review of the eval caused the delay in the

1    services. And I want to address a few more things relative to

2    the response. While it did not move for default in this case the

3    responses, well (inaudible) 14 and 15, it is fairly

4    comprehensive, it is not as comprehensive as the (inaudible)

5    defenses raised here. And I think this Hearing Officer has ruled

6    that against surprise defenses.

7         HEARING OFFICER: What surprise?

8         MR. TYRKA:  I'll go through them. DCPS never raised any

9    issue about whether it was invited to the meeting. They never

10   said that they had not been invited or there was any question.

11   DCPS raised an issue that - saying that Comp ed was part of of

12   the invitation. DCPS has never raised any issue about their

13   possession of the evaluation and in fact I think the response

14   specifically concedes that point.

15        HEARING OFFICER: I'm sorry, what was the last one?

16        MR. TYRKA:  The last one on DCPS responses, our Number 4,

17   paragraph number 2.  It says that DCPS agrees that there was a

18   failure to review the current evaluations.  So that was actually

19   admitted.

20        HEARING OFFICER: There number 4?

21        MR. TYRKA:  Our disclosure number 4, their paragraph number

22   2.

23        HEARING OFFICER: Okay.

1    MR. TYRKA:    So the main defenses, the defenses that

2    weren't raised, that were raised here had to do with the

3    invitation.  And also that is something that I paid attention to

4    and checked to as to whether they'd raised an issue on that to

5    see whether I needed to bring in witnesses or documents to

6    establish that fact. But there response did not address that.

7        HEARING OFFICER: Is that it?

8        MR. TYRKA:    That is it.

9        MR. GUPTA: I'd like to respond to the meeting invitation or

10    how it relates to the response.  The response we feel was fairly

11    was very detailed oriented. And had we known that the issue

12    being raised that – that can't delegate our authority, then

13    maybe we would have raised it in the response.  But, the I

14    believe that the document speaks for itself. The meeting

15    confirmation notice states, the purpose of the meeting and one

16    of those purposes is not comp ed.

17        HEARING OFFICER: Okay. Thank you very much. So are you

18    going to give me a memorandum on the issue of delegation

19        MR. TYRKA:    Yeah, I'll take a look at that case. If it is

20    very clear, I'll just send you both the case, if I need some

21    expedition. Two days is fine for me.

22        HEARING OFFICER: Close of business Monday, January 22, memo

23    of points and authority to both parties.

1      MR. GUPTA: If I'm getting it Monday, close of business.

2      HEARING OFFICER: I just want – If anybody wants to tell me

3   anything about delegation, give it to me by close of business

4   Monday. I'm not having briefs in reply. Just give me both your

5   positions.

6      MR. TYRKA:  Okay.

7      HEARING OFFICER: You don't have to if you don't want to. If

8   you believe I'm right, you don't have to provide anything.

9      MR. GUPTA: Okay.

10     MR. TYRKA:  Is the bare case okay, if I think it's

11  sufficient.

12     HEARING OFFICER: No, don't send me a case.

# District of Columbia Public Schools

## State Enforcement and Investigation Division

**Terry Michael Banks, Due Process Hearing Officer**
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

## Confidential

|  |  |  |
|---|---|---|
| E█████ H███, STUDENT | ) | |
| | ) | |
| Date of Birth: █████1995 | ) | Hearing Date: January 18, 2007 |
| | ) | |
| Petitioner, | ) | Complaint Filed: November 16, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Rock Creek Academy | ) | |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Theresa Hart, Mother |
| | 1223 Holbrook Street, N.E.; #3 |
| | Washington, D.C. 20002 |
| | |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire |
| | 1726 Connecticut Avenue, N.W.; Suite 400 |
| | Washington, D.C. 20009 |
| | (202) 265-4260; Fax: (202) 265-4264 |
| | |
| **Counsel for DCPS:** | Surabh Gupta, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | E███ H██ |
|---|---|
| Child's Parent(s) (specific relationship) | Theresa Hart, Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Surabh Gupta, Esquire |

2

2

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is an eleven year-old student attending Rock Creek Academy ("RCA"). On November 16, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) evaluate Petitioner in all areas of suspected disability, (2) review Petitioner's evaluations, (3) develop an appropriate Individualized Education Program ("IEP"), and (4) provide appropriate services. The due process hearing was convened on January 18, 2007. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing. Neither party offered oral testimony at the hearing.

**Findings of Fact**

1. Petitioner is an eleven year-old student attending RCA.[1]

2. On March 9, 2005, Mercedes Ebanks of Maria Cohn, Ph.D. & Associates completed a Functional Behavioral Assessment ("FBA") of Petitioner. Ms. Ebanks' findings and recommendations, *inter alia*, include the following:

> Based on this behavioral assessment, [Petitioner] has the ability to maintain appropriate behaviors in school. [Petitioner] responds to redirection and is encouraged by the current token economy program. Although [Petitioner] is distracted, sleepy, and speaks in a loud tone, he responds well to prompts and can regain his focus on assignments. He is interested in his academic progress and completes his assignments. He is able to accept consequences for his maladaptive behaviors. [Petitioner] is motivated by tangible reinforcers and praise. His target behaviors should include self-control behaviors, namely speaking in an appropriate tome and staying awake and alert.

> [Petitioner] should continue to follow the present behavior system and earn privileges based on the level system. Further assessment should be conducted after six months to evaluate his adjustment to the current school placement…[2]

---

[1] *Complaint* at 1.
[2] Petitioner's Exhibit No. 8 at 3.

3. RCA convened a Multidisciplinary Team ("MDT") meeting on November 14, 2006. No representative of DCPS participated in the meeting. The MDT classified Petitioner with multiple disabilities: Specific Learning Disability ("SLD") and Speech/Language Impaired ("SLI"). The MDT prescribed full-time specialized instruction, 90 minutes per week of speech and language services, one hour per week of psychological counseling, and 45 minutes per week of occupational therapy ("OT").[3]

**Conclusions of Law**

1. Petitioner's counsel argued that DCPS denied Petitioner a free appropriate public education ("FAPE") by failing to conduct an FBA within six months of Ms. Ebanks' evaluation as she recommended. The hearing officer concludes that this failure does not rise to the level of a violation of IDEIA. First, Petitioner's representatives at the MDT meeting on November 14, 2006 did not raise this as an issue. Second, Ms. Ebanks' evaluation describes a child that does have significant behavioral problems. Third, Ms. Ebanks' recommendation as to what needed to be evaluated in six months was vague; she did not specifically recommend an FBA. Even if she had, the Petitioner's representatives failure to raise the issue, combined with Petitioner's minimal behavioral issues, preclude a finding that the failure to conduct a second FBA within six months constituted an IDEIA violation.

2. Petitioner's counsel argued that Petitioner's representatives requested tutoring as compensatory education services at the MDT meeting and that DCPS' failure to participate in the meeting deprived the MDT of the opportunity to consider this issue. "[C]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student…"[4] Thus, compensatory education is awarded after a finding by a tribunal of a denial of FAPE. Since an MDT is not a tribunal, a petitioner has no inherent right under IDEIA to discuss entitlement to compensatory education services at an MDT meeting.[5]

A petitioner does have the right under IDEIA to an appropriate IEP. However, Petitioner's counsel offered no testimony or other evidence that DCPS failed to develop an appropriate IEP and failed to provide necessary services. While Petitioner's representatives may have asked for tutoring services for Petitioner at the MDT meeting,

---

[3] P.Exh. No. 6 at 1.
[4] *Reid v. District of Columbia,* 401 F.3d 516, 523-24 (D.C. Cir. 2005).
[5] Petitioner's counsel cited 20 U.S.C. Section 1414(d)1)(B)(iv), 34 C.F.R. §300.321(a) and 325(b)(2), 5 D.C.M.R. §3003.1(d), and *Roark v. District of Columbia*, 2006 U.S. Dist. LEXIS 77633 at 25 as authority for the mandatory presence of a representative of the LEA at an MDT meeting. First, Petitioner offered no evidence that DCPS was invited to or was aware of the MDT meeting. Second, DCPS' absence was immaterial in this case, because the only issue as to which Petitioner's representatives were dissatisfied at the MDT meeting was the lack of opportunity to discuss compensatory education services. As discussed above, Petitioner had no right to discuss this issue at the MDT meeting. Third, Petitioner's representatives made no effort to establish Petitioner's need for tutoring services as a necessary part of an appropriate IEP at the MDT meeting or at the hearing.

Petitioner's counsel offered no proof at the hearing that such services were needed. Thus, Petitioner failed to meet his burden on the issues of denial of services and inadequate IEP. Having failed to establish a denial of FAPE, Petitioner is not entitled to compensatory education services.[6]

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel at the hearing, this 25th day of January 2007, it is hereby

**ORDERED**, that the *Complaint* is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

_____
Terry Michael Banks
Hearing Officer

Date:  January 25, 2007          Issued: _____

Copies to:

Douglas Tyrka, Esquire
1726 Connecticut Avenue, N.W.; Suite 400
Washington, D.C. 20009
(202) 265-4260; Fax: (202) 265-4264

Surabh Gupta, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

---

[6] *Reid v. District of Columbia, supra,*  401 F.3d at 523-24.

## ATTENDANCE SHEET

**STUDENT'S NAME:** E████ H████

**SCHOOL OF ATTENDANCE:** RCA

**D.O.B:** ████/95

**HEARING DATE:** 1/18/0    **ROOM:** A1    **TIME:** 1:10    A.M./P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Douglas Tyrka | student | Counsel for Parent |
| Saurabh Gupta | DCPS | Atty-Advisor |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer

Revised 10/17/2006

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer Banks ~ SHO & Saurabh Gupta ~ OGC |
| *Fax Number:* | |
| *From:* | Douglas Tyrka |
| *Regarding:* | B████ H███ (D.O.B. ████/95) |
| *# of pages:* | 7 |
| *Notes:* | Motion for Reconsideration |

OFFICE OF THE
GENERAL COUNSEL
2007 FEB -8 AM 10: 42

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

7

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT AND INVESTIGATION DIVISION

|  |  |  |
|---|---|---|
| In re E_____ H_____, | ) | Terry Michael Banks |
| Special Education Student, | ) | Impartial Hearing Officer |
|  | ) |  |

## PETITIONER'S MOTION FOR RECONSIDERATION

The Petitioner respectfully requests that the Hearing Officer reconsider his HOD of January 25, 2007, to find that DCPS failed timely to review all evaluations and to develop an appropriate IEP in accordance with those evaluations, and to order DCPS to convene an MDT meeting to develop an appropriate compensatory education plan to compensate E____ for those failures.

### RELEVANT BACKGROUND

On April 3, 2006, E____'s school, Rock Creek Academy ("RCA"), acting on behalf of DCPS, completed a speech and language evaluation of E____. EH 9. As DCPS has admitted, DCPS did not timely convene a meeting to review that evaluation and to update E____'s IEP accordingly. *See* EH 4 ("DCPS agrees that there was a failure to timely review the current evaluations[.]")

On November 14, 2006, RCA convened a multidisciplinary team ("MDT") meeting to, *inter alia*, review the results of E____'s April 3, 2006 speech and language evaluation for the first time. *See* EH 6, 7. DCPS failed to attend that meeting, though RCA had invited DCPS. *See* EH 3, 4 (due process complaint alleging that DCPS had been invited to the meeting and had failed to attend; DCPS Response containing no denial of that claim).

1

At the November 2006 meeting, the MDT reviewed the April 2006 speech and language evaluation and increased the speech and language services on E███████ IEP from 60 minutes per week to 90 minutes per week. EH 6, 7. At the meeting, "[p]arent and advocate was [sic] prepared to move forward to have comp. ed. discussion" relating to the increase in speech and language services, but "DCPS wasn't in attendance to move forward." EH 7.

On November 16, 2006, the Petitioner filed a due process complaint. EH 3. As DCPS violations the Complaint alleged, *inter alia*, "[f]ailure to timely review current evaluations in all areas of suspected disability" and "[f]ailure to timely develop an appropriate individualized education plan." *Id.* The complaint alleged the specific facts stated above regarding the April 2006 speech and language evaluation and the November 2006 meeting. *Id.*

As relief, the Complaint requested, *inter alia*, that DCPS be ordered immediately to "convene an MDT meeting to develop an appropriate compensatory education plan to compensate E█████for missed speech and language therapy from April 3, 2006 to November 14, 2006." EH 3.

The hearing in this case was held on January 18, 2007. The bulk of the hearing was spent in argument regarding the necessity of DCPS' presence at the November 2006 meeting, an issue on which the Hearing Officer ordered post-hearing briefing.

The Hearing Officer issued his HOD on January 25, 2007. In the HOD, the Hearing Officer denied the Petitioner's request for a meeting to determine compensatory education on two bases: 1) DCPS was not obliged to discuss compensatory education at

the November 2006 meeting; 2) the Petitioner did not establish "denial of services and inadequate IEP."

The Hearing Officer did not address the Petitioner's claim that DCPS had violated the IDEA by failing to review the April 2006 speech and language evaluation and failing to amend the IEP accordingly before November 2006.

## ARGUMENT

The IDEA requires that an IEP be revised "as appropriate to address...the results of any reevaluation." 20 U.S.C. § 1414(d)(4)(A)(ii). The IDEA also requires that the IEP include all necessary revisions "[a]t the beginning of each school year." 20 U.S.C. § 1414(d)(2)(A)

Upon the completion of the speech and language reevaluation of ██████ on April 3, 2006, DCPS was obliged to revise his IEP address the results of evaluation, as necessary. DCPS failed to do so before November 14, 2006 – after the start of the school year – when RCA arguably did so on DCPS' behalf. DCPS has itself admitted that the review of the evaluation and consequential revision of the IEP were therefore untimely. *See* EH 4 ("DCPS agrees that there was a failure to timely review the current evaluations[.]")

When the evaluation was finally reviewed, the MDT increased E████'s speech and language services based on the evaluation's results. *See* EH 6, 7. Therefore, before that revision, E████'s IEP was inadequate.

By DCPS' own admission, the review of the evaluation and revision of the IEP were untimely. Therefore, E████ should have been prescribed, and should have received, the additional services sooner.

3

The Complaint clearly alleges DCPS' "[f]ailure to timely review current evaluations in all areas of suspected disability" and "[f]ailure to timely develop an appropriate individualized education plan," along with the specific facts regarding the timing of the evaluation and the meeting, and the services eventually added to the IEP. EH 3. The documents entered into the record, then discussed at the hearing, clearly establish those facts and claims, though DCPS' concession of those claims in their Response made that proof redundant.

The Hearing Officer rejected the Petitioner's argument that DCPS was obliged, at the MDT meeting, to determine services to account for the delay in reviewing the evaluation. However, the Hearing Officer appears not to have considered the Petitioner's preliminary claim, that DCPS violated E███'s rights simply by failing to review the evaluation.

Accordingly, the Hearing Officer should reconsider the HOD and find that DCPS violated the IDEA and denied E███ FAPE by failing to review the April 3, 2006 evaluation sooner, and consequently failing to prescribe him and provide him with necessary services until November 2006.

For these reasons, the Petitioner respectfully requests that the Hearing Officer reconsider the HOD and order DCPS to meet to develop an appropriate compensatory education plan to compensate E███ for DCPS' failure timely to review his speech and language evaluation and timely to revise his IEP accordingly.[1]

---

[1] The propriety of such an HOD, when requested by a parent, has been endorsed by the United States District Court for the District of Columbia and by the District of Columbia Office of the Attorney General. *See* Blackman-Jones v. District of Columbia, 2006 WL 2456413 (D.D.C.)("Defendants will ensure that all IEP teams are authorized to determine compensatory education awards and that all teams are made aware of and exercise that authority.)

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2007 I sent a copy of the foregoing by facsimile to Counsel for the Respondent at (202) 442-5098.

Sincerely,

Douglas Tyrka

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| **Recipient:** | Hearing Officer Terry Banks ~ SHO |
| | Saurabh Gupta ~ SHO |
| **Fax Number:** | |
| **From:** | Douglas Tyrka |
| **Regarding:** | E███H███ |
| **# of pages:** | 4 |
| **Notes:** | Memorandum |

2007 JAN 19 AM 10: 15
DC PUBLIC
SCHOOL SYSTEM

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

14

**Before the**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**OFFICE OF MANAGEMENT SERVICES**

| | | |
|---|---|---|
| In re E███ H███, | ) | Terry Banks, Esq. |
|     Special Education Student, | ) | Impartial Hearing Officer |
| | ) | |

## PETITIONER'S SUPPLEMENTARY MEMORANDUM REGARDING NECESSITY OF LEA PARTICIPATION IN IEP MEETINGS

As ordered at the hearing of January 18, 2007, the Petitioner respectfully submits this Memorandum regarding the necessity of LEA participation in IEP meetings convened at private schools.

The IDEA requires that an IEP team include, *inter alia*, "a representative of the local educational agency." 20 U.S.C. § 1414(d)(1)(B)(iv). The federal regulations likewise require that "[t]he public agency must ensure that the IEP Team for each child with a disability includes...[a] representative of the public agency[.]" 34 C.F.R. § 300.321(a). The District of Columbia regulations require that "[t]he IEP team for each child with a disability shall include...a representative of the LEA[.]" D.C. Mun. Regs. Tit. 5, § 3003.1(d) (2006).

The federal regulations addressing LEA responsibility for children placed in private schools by the LEA specifically require LEA participation in IEP meetings.

> "If the private school or facility initiates and conducts these meetings, the public agency must ensure that the parents and an agency representative...are involved in any decision about the child's IEP; and...[a]gree to any proposed changes in the IEP before those changes are implemented."

34 C.F.R. § 300.325(b)(2).

2007 JAN 19 AM 10: 15
DC PUBLIC
SCHOOL SYSTEM

1

15

In Roark v. District of Columbia, the United States District Court for the District of Columbia directly addressed the question of the necessity of LEA participation in IEP meetings held at private placements.

> The participation by representatives of [the private school] does not fulfill DCPS' obligation to attend. The IDEA states that a "representative of the local educational agency" must be included on the IEP team. Because this representative is "presumably an employee of the agency," DCPS cannot relegate its responsibility to be an active participant of the IEP team to a Lab School administrator or anyone else. Reid, 401 F.3d at 526.

2006 U.S. Dist. LEXIS 77633 at 25 (internal statutory and regulatory citations omitted).

For these reasons, DCPS was and is required to participate in IEP meetings for ████ held at Rock Creek Academy.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2006 I sent a copy of the foregoing by

facsimile to Saurabh Gupta, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000     Fax: 202-442-5098
www.k12.dc.us

January 10, 2007

Douglas Tyrka, Esq.,
1726 Connecticut Ave, NW
Suite 400
Washington DC 20009

**DISCLOSURE STATEMENT**

**VIA FACSIMILE (202) 265-4260**

| | |
|---|---|
| **Subject:** | **Due Process Complaint for E▉▉▉ H▉▉** |
| **DOB:** | ▉▉▉▉1995 |
| **Attending School:** | **Rock Creak Academy (RCA)** |

Dear Mr. Tyrka:

At the upcoming due process hearing in the above-referenced matter scheduled for Wednesday, January 16, 2006 at 3:00 p.m. or any subsequent hearing, and pursuant to 20 USC § 1214 (the Individuals with Disabilities Education Improvement Act of 2004) and 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents[1], in addition to any documents and/or witnesses previously disclosed by any party for any earlier hearing for this student and/or compelled below:

**Witnesses**

1.  Marla C. Oakes, Director of Special Education, DCPS and/or designee(s) - 825 North Capitol Street, N.E., Washington, D.C. 20002; (202) 442-4800 – *same for all Central Office staff*;
2.  Michael Snipes, Assistant Superintendent, Division 6, DCPS and/or designee(s) - *Central Office staff*;
3.  Sheri Waul, DCPS Nonpublic Placement Specialist, and/or designee(s) - *Central Office staff*;
4.  DCPS Special Education related service providers, DCPS, and or designee(s) – *Central Office staff*;

Pursuant to 34 C.F.R. 300.509(a)(2) and 5DCMR 3031.1(b), DCPS hereby compels the attendance of the below named individual as a necessary and material witness(es):

**1.  Theresa Hart, Student's Parent/Guardian (Compelled)**

---

[1] Witnesses may testify by telephone.

RE:    Due Process Hearing for E█████ H███

|  | **Documents:** |
| DCPS-01 | Student Evaluation Plan (11/14/2006) |
| DCPS-02 | IEP (11/14/2006) |
| DCPS-03 | Behavior Intervention Plan (3/8/2006) |
| DCPS-04 | MDT Meeting Notes (11/14/2006) |

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing.

DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case. Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5178.

Sincerely,

Saurabh Gupta
Attorney Advisor

cc: Student Hearing Office

| | MDT |
| --- | --- |
| | SEP |

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**STUDENT EVALUATION PLAN**
**(SEP)**

MDT REFERRAL DATE: __11/14/2006__                                                              MEETING DATE: 11/14/2006
STUDENT: __H___ E_____  DOB: ___/1995  AGE: __11__  GRADE: __06__  SCHOOL: __Rock Creek Academy__
STUDENT IDENTIFICATION NUMBER: __9074804__  TEACHER/HOMEROOM: Ms. Kepple / Ms. Johnson
ADDRESS: __1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C.  20002__
PARENT(S)/GUARDIAN: __Theresa Hart / Ernest McQueen, Jr.__  TELEPHONE (H): __202-610-0977__  TELEPHONE (W): __202-455-2596__

**Summarize Area(s) of Concern:**
MDT is concerned with his auditory processing, occupational therapy to determine his current level of functioning and neuropsychological evaluation to look at his execute functioning. MDT is concerned with whether E___ has ever sustained a brain injury or if he has ADHD.

**Team Recommendations:**
MDT is recommending that he should have an OT and Neuropsychological evaluation.

|  |  |  | **TIMELINE** | |
| --- | --- | --- | --- | --- |
| **ASSESSMENT** | **ASSESSOR** | **TEST INSTRUMENT** | **ASSIGNED** | **DUE DATE** |
| Other | ___ | __Neuropsychological and OT__ | __ | __ |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
| --- | --- | --- | --- |
| __Sharon Millis__ | __Ed. Advocate__ | __Mrs. Constantian__ | __Occupational Therapist__ |
| __Mrs. Haley__ | __Speech Pathologist__ | __Mrs. Anderson__ | __Clinical Therapy__ |
| __Ms. Page__ | __IEP Coordinator__ | __Mrs. Kepple__ | __Special Educator__ |

The MDT meeting to discuss the evaluation results is scheduled on ___ at ___ in room ___

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC
INDIVIDUALIZED EDUCATIONAL PROGRAM

## I. IDENTIFICATION INFORMATION

Student Name: Last _H___ First: ___ MI: __
StudentID: _9074804_ Soc. Sec. No.: _____ Age: _11_ Grade: _06_
Gender: _M_ Date of Birth: ____/1995 Ethnic Group: _Black_
Address: _1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_
☑ Non-attending
Attending School: _Rock Creek Academy_ Home School: __
☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS
Parent: _Theresa Hart_

Address of: ☑ Parent ☐ Guardian ☐ Surrogate
_1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_
Telephone: Home _202-610-0977_ Telephone: Work __

## II. CURRENT INFORMATION

Date of IEP Meeting: _____2006
Date of Last IEP Meeting: _3/7/2006_
Date of Most Recent _3/7/2006_
Eligibility Decision:
Purpose of IEP Conference:

☐ Initial IEP          ☑ Review of IEP

☑ Requested Eval      ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)
☑ BEHAVIOR              ☑ ESY
☑ TRANSPORTATION        ☐ TRANSITION

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Language | Oral N/A |
| Parent | English | English | English | Native Language | Rdg./Written |
| Home | English | English | English | Native Language | Instrument Date |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instructions | ☑ | ☑ | 24.55 | hr | W | Special Educator | 11/14/2006 | 11 | mos. |
| Speech Language | ☑ | ☑ | 1.5 | hr | W | Speech Pathologist | 11/14/2006 | 11 | mos. |
| Psychological Counseling | ☑ | ☑ | 1 | hr | W | Social Worker/Psychologist | 11/14/2006 | 11 | mos. |
| Occupational Therapy | ☑ | ☑ | 0.45 | min | W | Occupational Therapy | 11/14/2006 | 11 | mos. |
| | | Total | 27.5 | Hours Per Week | | | | | |

## V. DISABILITY(IES) Specific Learning Disability, Speech/Language Impairment

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☐ 21-60% ☑ 61-100%
Percent of time NOT in Regular Education Setting _100%_

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ms. Johnson, Special Educator          _____          _____
Mrs. Anderson, Clinical Therapist      _____          _____
Ms. Kepple, Special Education          _____          _____
Mrs. Haley, CCC-SLP                    _____          _____
Ms. Arvette D. Page, IEP Coordinator   _____          _____
Ms. Millis, Ed. Advocate               _____          _____
Mrs. Constantian, OTR/L                _____          _____

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of hte procedureal safeguards and parent rights pertaining to special education.

Parent/Guardian Signature_____          Date_____

## VII. PRESENT EDUCATIONAL PERFORMANCE LEVELS IN AREAS AFFECTED BY THE DISABILITY

**Academic Areas: (Evaluator)** Ms. Annunziata

**Math Strengths:**
E___ has a great interest in math. ___ can add with regrouping and subtract multi-digit numbers. He can read and write 5 digit numbers. His motivation & hardwork in the classroom continue to help him in his success.

**Impact of disability on educational performance in general education curriculum:**
E___ disability presents a struggle for E___ to process infromation correctly. E___ responds well to one on one time in math to effectively understand. E___ also speeds through problems and makes careless mistakes. He has not mastered his

**Score(s) When Available**
Math Cal. _78_ _2.8_
Math Rea. _79_ _2.1_
Date _4/18/2006_
Rdg. Com. _75_ _1.9_
Rdg. Basic _65_ _1.9_
Written Ex. _73_ _2.3_
Date _4/18/2006_

multiplication facts, subtraction with regrouping or division

**Reading Strengths:**
B████ know his consonant, vowel and digraph sounds and can blend them to form words. He can read simple stories with some fluency and works hard to please the adults present. E█████ has a strong sight word vocabulary.

**Impact of disability on educational performance in general education curriculum:**
E████'s disability impacts his performance. He struggles with decoding and encoding words. E██████ does not always apply what he knows without prompts. He continues to write sentences without capitalizing the first letter of each or use of puncuation.

---

**Communication (Speech & Language): (Evaluator)**
**Strengths:**
E█████ relative strength is his receptive language skills and his ability to execute oral commands containing concepts of functional language.

**Impact of disability on educational performance in general education curriculum:**
His expressive language skills in terms of knowledge of grammatical usage makes it difficult for him to express himself.

**Score(s) When Available**

| | | |
|---|---|---|
| Exp. Lang. | 59 | CELF |
| Rec. Lang. | 86 | CELF |
| Artic. | wnl | |
| Voice | wnl | |
| Fluency | wnl | |
| Exp. Voc. | 72 | EOWPVT |
| Rec. Voc. | 78 | EOWPVT |
| Date | 1/30/2004 | |

---

**Motor/Health: (Evaluator)** Ms. Poindexter, OTR/L
**Strengths:**
Motivated and cooperative. He demonstrates good effort during all attempts to complete assignments upon request.

**Impact of disability on educational performance in general education curriculum:**
E████ presents with difficulty in written communication and attending which may negatively impact classroom participation and work assignments.

**Score(s) When Available**
— —
— —
Date __

---

**Social Emotional Behavioral Areas: (Evaluator)**
**Strengths:**
Able to follow rules in therapy sessions and works cooperatively in a group setting w/peers.

**Impact of disability on educational performance in general education curriculum:**
E████ gets easily frustrated which causes him to engage in off-task behaviors

**Score(s) When Available**
— —
— —
Date __

---

**Cognitive/Adaptive Behavior: (Evaluator)**
**Strengths:**
**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
— —
— —
Date __

---

**Prevocational Skills: (Evaluator)**
**Strengths:**
**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
— —
— —
Date __

---

**VIII. SPECIALIZED SERVICES**

---

**Goal Number:** 1
**ANNUAL GOAL: (including mastery criteria)**
**Area Addressed By Goal:** Math
E████ will show 6 months growth in math skills as measured by the Woodcock Johnson Test of Achievement Broad Math Cluster score.

**Provider(s):** Specail Education Teacher

☑ Portfolio ☐ Log ☑ Chart ☑ Test ☑ Documented Observation ☐ Report ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will wrtie and read 7 digit numbers with 80% accuracy in 4 out of 5 trials.
**Date Mastered: Evaluation Schedule:** Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
When solving word problems, E████ will identify procedure (addition, subtraction, multiplication or division) with 80% accuracy in 9 out of 10 trials.
**Date Mastered: Evaluation Schedule:** Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will tell time on an analog clock to the minute with 80% accuracy in 4 out of 5 trials.

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▆▆▆will solve a multi-digit by a single digit division problem with and without a remander.
**Date Mastered:   Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▆▆▆ will read and interpret grade aoppropriate graphs with 80% accuracy in 4 out of 5 trials.
**Date Mastered:   Evaluation Schedule:**   Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▆▆▆ will identify common measurement of time(ex.365 days /year), length(ex. 12 inches in a foot), weight(16 oz in a pound) with 809% accuracy in 4 out of 5 trials.
**Date Mastered:   Evaluation Schedule:**   Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
H▆▆, E▆▆▆ will demonstrate an understanding of fractions by correctly drawing and recognizing pictorial representations of them 80% of the time.
**Date Mastered:   Evaluation Schedule:** __

Goal Number: _3_

**ANNUAL GOAL: (including mastery criteria)**                    Area Addressed By Goal: _Occupational Therapy_

H█ E████ will improve visual motor, visual perceptual and fine motor skills for greater success in academic assignments and functional activities a s evidenced by a one year improvement over baseline.

**Provider(s):** Occupational Therapist

☐ Portfolio  ☑ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☑ Report  ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will copy a paragraph of 4-5 sentences without skipping lines, omitting words or letters on 4/5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will demonstrate visual closure skills in simple shape/designs with 80% accuracy on 4/5 opportunities.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will demonstrate improved visual memory by recalling and reproducing the shape of lower case cursive letters with 80% accuracy on 4/5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will demonstrate the functional motor skills necessary to write a legible, consistent, cursive signature on 8/10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will demonstrate improved separation of the two sides of the hand to complete fine-motor manipulative tasks with increased fluidity, speed, and accuracy on 4/5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will complete a 4-5 step project with 1-2 verbal prompts after a demonstration on 4/5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

## VIII. SPECIALIZED SERVICES

Goal Number: _1_

**ANNUAL GOAL: (including mastery criteria)**                    Area Addressed By Goal: _Reading_

E███ will show 6 months improvement in reading based on the Woodcock Johnson Test of Achievement, Broad Reading cluster score..

**Provider(s):** Special Education Teacher

☑ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will ask himself questions to monitor meaning; Does that sound write?, Does that look right?, Does that make sense?
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will demonstrate awareness of puncuation by pausing, phrasing, and reading with inflection with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will reread to search for meaning with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E███ will use sound/ letter relationships, known words, and word parts to figure out new words with 80% accuracy in 9 out of 10trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Before and during reading E▇▇▇ will make predictions with 80% accuracy in 9 out of 10 trials.
**Date Mastered:   Evaluation Schedule:   Monthly**

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▇▇▇ will describe author's purpose with 80% accuracy in 9 out of 10 trials.
**Date Mastered:   Evaluation Schedule:   Monthly**

**ANNUAL GOAL: (including mastery criteria)**                    Goal Number: _1_

E▓▓▓ will exhibit improved control over emotions as demonstrated by the mastery of the following objectives 80% of the time.              **Area Addressed By Goal:** _Social Behavioral_

**Provider(s):** Psychologist/Social Worker/Therapist

☑ Portfolio   ☑ Log   ☑ Chart   ☑ Test   ☑ Documented Observation   ☐ Report   ☑ Other Quarterly Progress Report

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In the school setting, E▓▓▓ will verbalize his feelings of frustration and anger to an adult instead of acting them out in 4 out of 5 instances.
**Date Mastered:**   **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy sessions, E▓▓▓ will identify situations where he becomes angry or frustrated in 4 out of 5 given opportunities.
**Date Mastered:**   **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will identify and demonstrate three effective ways to handle his anger and frustration over a one month period.
**Date Mastered:**   **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E▓▓▓ will practice relaxation techniques which he can use to calm down when feeling angry or frustrated in 4 out of 5 opportunities.
**Date Mastered:**   **Evaluation Schedule:** _Monthly_

**Goal Number:**  2

**ANNUAL GOAL: (including mastery criteria)**                              **Area Addressed By Goal:**  Social Behavioral
E████ will demonstrate the ability to verbally express feelings of sadness as demonstrated by the mastery of the following objectives 80% of the time.
**Provider(s):** Psychologist/Social Worker/Therapist

☒ Portfolio   ☒ Log   ☒ Chart   ☒ Test   ☑ Documented Observation   ☒ Report   ☒ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will establish a trusting relationship with his therapist as evidenced by sharing feelings spontaneously 2-3 times per session.
**Date Mastered:   Evaluation Schedule:**   Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will identify triggers that make him feel sad in 4 out of 5 given opportunities.
**Date Mastered:   Evaluation Schedule:**   Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E████ will express feelings of sadness or hurt through play and/or through art at least twice per month.
**Date Mastered:   Evaluation Schedule:**   Monthly

Goal Number: _3_

**ANNUAL GOAL: (including mastery criteria)**    Area Addressed By Goal: _Social Behavioral_

E▮▮▮ will improve his ability to develop and maintain positive interpersonal relationships as demonstrated by the mastery of the following objectives 80% of the time.

**Provider(s):** Psychologist/Social Worker/Therapist

☑ Portfolio  ☑ Log  ☑ Chart  ☑ Test  ☑ Documented Observation  ☑ Report  ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able discuss current interpersonal relationships (i.e. peers, sibling, family, etc.) with therapist in 4 out of 5 sessions.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will identify at least three ways to develop and maintain positive relationships over a one month period.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E▮▮▮ will role play positive interpersonal interactions twice per month.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will implement positive interpersonal skills learned in counseling evidenced by 0 incidents of verbal or physical aggression towards peers in 4 out of 5 instances.
**Date Mastered:  Evaluation Schedule:** _Monthly_

---

## VIII. SPECIALIZED SERVICES

Goal Number: _1_

**ANNUAL GOAL: (including mastery criteria)**    Area Addressed By Goal: _Speech/Language_

E▮▮▮ improve his expressive language skills with 80% accuracy.

**Provider(s):** Speech Language Pathologist

☑ Portfolio  ☑ Log  ☑ Chart  ☑ Test  ☑ Documented Observation  ☑ Report  ☑ Other Quarterly Progress Report

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to use correct irregular plural forms with in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to use comparative and superlative constructions in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to use possessive pronouns in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to formulate complete sentences when given a noun and a verb in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to to use adverbs and adjectives in simple sentences in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to to use conjunctions in simple sentences in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will be able to identify 3 details of a short narrative in 8 out of 10 trials.

Date Mastered:   Evaluation Schedule:   Monthly

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮▮ will be able to express the relationship between words in 8 out of 10 trials.
**Date Mastered:   Evaluation Schedule:   Monthly**

Goal Number: _1_

**ANNUAL GOAL: (including mastery criteria)**    Area Addressed By Goal: _Written Language_

E████will increase his written language skills by 6 months as measured by the Woodcock Johnson test of Acheivement Written expression cluster score.

**Provider(s):**

▦ Portfolio  ▦ Log  ▦ Chart  ▦ Test  ▦ Documented Observation  ▦ Report  ▦ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████will use capitalization when begining a sentence, writing names and writing the pronoun "I" 80% of the time in 4 out of 5 trials.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will spell from weekly grade appropriate spelling list that apply spelling patterns with 80% accuracy in 4 out of 5 trials.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
When writing sentences, E████ will end them in correct puncuation (?,., !).
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will write a paragraph with details supporting an idea with 80& accuracy in 4 out of 5 trials.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
After writing E████ will proof and revise his work with 80% accuracy in 4 out of 5 trials.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

---

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINITATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ◉ Yes
◉ No

Explanation for removal out of regular education classroom.
Student's emotional needs were not being met in the general ed. setting.

---

**X. SUPPLEMENTAL AIDS AND SERVICES**

| CLASSROOM NEEDS (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr.Min | D/W/M | | |

Check and list modifications and/or accommodations for testing: ☐ **None Needed**

| | |
|---|---|
| Timing/Scheduling: | Extended Time |
| Setting: | Small group setting |
| Presentation: | Repeated directions |
| Response: | Extended time |
| Equipment: | |

---

**XI. STATE AND DISTRICT ASSESSMENTS**

☑ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III  (Describe non-uniform conditions for levelII) Tested under non-standard conditions with permissible accommodations.

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

---

**XII. AREAS REQUIRING SPECIALIZED INSTRUCTION AND RELATED SERVICES:**

☑ Reading  ☐ Physical  ☐ Transition  ☐ Language Arts/English

☑ Mathmatics          ☐ Social Emotional      ☐ Vocational          ☐ Social Science
☑ Written Expression  ☐ Physical Development   ☐ Independent Living  ☐ Biolocial & Physical Science
☐ Other               ☐                        ☑ Speech/Language     ☐ FineArts
☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | ○ Accept  ○ Reject | Continued School Failure |
| General Ed/Combination | ○ Accept  ○ Reject | Continued School Failure |
| Out of genreal education | ○ Accept  ◉ Reject | Impact on Self-esteem |

**Modifications(s)/Accommodation(s) to address the harmful effects:**
Student's self-esteem can be addressed in clinical therapy.
**Location for Services:** Rock Creek Academy

# DOCUMENTED LEVEL OF SERVICE (PERM)
## Complete and attach to MDT/IEP meeting notes

School: _Rock Creek Academy_   Principal: _Semanthe Bright_   Special Education Coordinator: _Ms. Page_
Date: _3/7/2006_   Case Manager: _Ms. Anderson_   Technical Support Supervisor: __
Student: _H___ E___   DOB: ___/1995   Age: _11_   Grade: _06_   ID#: _9074804_   SSN#: _____
Parent: _Theresa Hart_   Telephone (H): _202-610-0977_   Telephone (W): __
Address: _1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_

REFERRAL SOURCE: (Check) ○ 120 Day ○ Reeval ○ HOD ○ SA ○ MA ◉ Nonpublic

○ Residential ○ Citywide ○ Courts ○ Local School ○ Other ___
Previous least restrictive environment (LRE Setting): _Out of general education_

---

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
#### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/MODIFICATIONS | 3. DATA REQUIREMENTS | |
|---|---|---|
| Small group setting, periodic breaks, extended time and repeated directions. | Current IEP | ◉ Yes ○ No |
| | Signatures of required participants (MDT Only) | ☑ Yes |
| | Intervention Behavior Plan | ☑ Yes |
| | Copies of current class work and homework assignments | ☑ Yes |
| | Medical Reports | ○ Yes ○ No |
| | Clinical Reports | ○ Yes ○ No |
| | Psychiatric Reports | ○ Yes ○ No |
| | Medications | ○ Yes ○ No |
| | Attendance Record | ☑ Yes |
| | Copies of most recent evaluation(s) | ☑ Yes |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes) | 5. Resources needed for program implementation |
|---|---|
| See IEP meeting notes. | N/A |

---

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☑ in general education classroom setting | ☑ general educators with consultation from special education staff | ☑ between 0% and 20% of service time |
| 2 | ☑ combination general education and resource classroom | ☑ combination of general educators, special educators and related service providers | ☑ between 21% and 60% of service time |
| 3 | ☑ *out of general education classroom | ☑ *special educators and related service providers | ☑ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activies, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activies (300.306) to the maximum extent appropriate to the needs of that child (300.553) Nonacademic settings)

#### Check the level of need as indicated:
#### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW If two or three boxes are checked in the Row 2, check MODERATE If two or three boxes are checked in the Row 3, check HIGH | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

#### 7. LEVEL OF NEED

| ○ LOW | ○ MODERATE | ◉ HIGH |
|---|---|---|

---

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

| | IEP Attachment B Transportation |
|---|---|

**TRANSPORTATION DIVISION
STUDENT TRANSPORTATION
DATA FORM**

(MDT must first determine if student meets the requirements for transportation services and has it included in the IEP
Person Making Request: _Ms. Page_
Date of Request: _3/7/2006_
Status of Request: ___
Date Request Received: ___
Person Receiving Request: ___

_2005-2006_
School Year

_9074804_
STUDENT IDENTIFICATION NUMBER

| H___ | E___ | |
|---|---|---|
| Student Last Name | First Name | MI |

Theresa Hart
**Parent / Guardian** (Print legibly or type)

1233 Holbrook Terrace, NE, Apt #3
**Address**

202-610-0977
**Telephone (H)**

_____
**Telephone (W)**

Ms. Toloria Gant
**Emergency Contact**

aunt
**Relationship**

202-388-8502
**Telephone No.**

_____
**Page/Cell No.**

Students will be taken to a central location until 6:00 p.m. If the bus attendants are unable to deliver them to the designated location. After 6:00 p.m. the police will be contacted. This year's central location is ___

Washington          D.C.          20002
**City**              **State**      **Zip Code**

___/1995   M   English          Rock Creek Academy, Inc. (202) 378-1400
**DOB**   **Gender** **Primary Language**   **Submitting School and Telephone Number**

Specific Learning Disability
**Disability Classification**          **Medical Issues**

**MODE OF TRANSPORTATION** ☑ *Bus ☐ Tokens ☐ Farecards
***SPECIAL ACCOMMODATIONS FOR BUS**
Height ___   Weight ___

☒ Oxygen ☐ Tracheotomy Tube ☒ Seizures ☒ Helmet

☒ Harness ☒ 1:1 Aide ☒ Behavioral Issue ___
Medication ___   Specific Allergies ___
Dosage Required during transporation:
◯ Yes ◯ No      Dosage ◯ PM ◯ AM

☒ Mobility ☒ Ambulatory ( ☒ Cane, ☒ Crutch, ☒ Walker)

         ☒ Ambulatory w/ assistance ( ☒ Cane, ☒ Crutch, ☒ Walker)

         ☒ Non Ambulatory ( ☒ Standard, ☒ Motorized,

         ☒ Oversized w/lap tray ◯ Yes ◯ No )

☒ Car Seat          ☒ Positioning Device ___

☒ Special Restraint    ☐ Other, Describe: ___

**Click one of the following:**

☑ **AM Pick-up & Drop-off** is the same as the student address.

☒ AM Pick-up Address: ___ Phone: ___

☒ PM Pick-up Address: ___ Phone: ___

**Transportation will NOT be provided without confirmed placement through the proper procedures. Justification for other than neighborhood settings must be explained on the back by the shcool oficial requesting the transportation service.**

Arvette Page                      202-378-1400                        3/7/2006
**School Official requesting transportation service:** **Telephone No.**                    **Date**
Rock Creek Academy              4401 Connecticut Avenue, NW Washington, DC 20008      202-378-1400
**School to Attend:**              **Address of School**                              **Telephone No.**

Questions may be directed to the Special Education Transportation Liaison.

Date Developed: ___

## DCPS TRANSITION SERVICES PLAN

Note: The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I. Record student's post-secondary goals and interests.**
             **Employment:** ___
    **Community Participation:** ___
**Post-Secondary Education and Training:** ___
        **Independent Living:** ___

**II. Courses of study leading to student's post-high school goals**

| Grade of School Year | Courses of Study |
|---|---|
| | |

**III. Transition Services Needed.**
Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communicaiton, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills, Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill/Trade Training, Vocational, or Social Relationships.

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment | | |

| If service is not needed provide explanation. | | |
|---|---|---|
| Community Participation<br><br>If service is not needed provide explanation. | | |
| Post - Secondary Education and Training<br><br>If service is not needed provide explanation. | | |
| Independent Living<br><br>If service is not needed provide explanation. | | |
| Daily Living Skills<br><br>If service is not needed provide explanation. | | |
| Functional Vocational Evaluation<br><br>If service is not needed provide explanation. | | |
| Other | | |

| State Test Requirements | Area | Date Taken | Score Received |
|---|---|---|---|
| | | | |

**IV.**

| Projected Exit Category (check one) | High School Diploma Status | Projected Exit Date |
|---|---|---|
| ☑ DC High School Diploma | # Credits Earned toward graduation | |
| ☑ High School Certificate at age 21" | | |
| ☑ High School Certificate prior to age 21 | # Community Service Hours Completed | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*
   Examples of Agency Linkages Needed for Transition
   • Rehabilitation Services Administration (RSA)
   • Mental Retardation and Developmental Disabilities Administration (MRDDA)
   • Commission on Mental Health Services (CMES)
   • UDC or other higher education Institutions

| Agency | Agency Representative | Telephone Number | Purpose of Contact | Date |
|---|---|---|---|---|

District of Columbia Public Schools
Washington, D.C.

**INTERVENTION BEHAVIOR PLAN**

Student Name:  H___ E___  ID#:  9074804   DOB: ___/1995   Grade:  06 
Address:  1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C.  20002 
Telephone (H):  202-610-0977   (W): ___ Counselor:  Mrs. Anderson 
Attending School:  Rock Creek Academy   Teacher:  Ms. Annunziata, Special Educator   Room: ___  Section: ___
**TARGETED BEHAVIOR(S): Additional Comments:** ☑
Easily frustrated
Shuts down
Crying

**POSITVE INTERVENTION STRATEGIES: Student Objective**
E___ will verbalize his feelings of frustration to an adult.
E___ will utilize coping skills identified in therapy when he becomes frustrated.

**Implementation Description:**
Teacher will make themself available for E___ to talk to when he becomes frustrated.
Teacher will give E___ step by step instruction to help E___ ease his frustration when he is challenged.

**POSITIVE INTERVENTION STRATEGIES: Teacher Strategies**
Teacher will give E___ one-on-one attention.
Teacher will give E___ verbal praise when E___ is on task and utilizing coping skills.
Teacher will give E___ tangible rewards for on task behaviors.

**MONITERING SYSTEM: Responsible Teacher**
**Describe System:** point sheet
occasional calls home to parent
**Data Collection Timeline:** Daily (point sheet)

**FOLLOW-UP MEETING:**

**District of Columbia Public Schools**
**Washington, D.C.**
**Division of Special Education**
**FUNCTIONAL BEHAVIORAL ASSESSMENT**

Student:  H___ E___   DOB: ___/1995  Date: 3/8/2006 
School:  Rock Creek Academy, Inc.   Grade:  06   Special Ed Coordinator: A. Page

**Describe and Verify the Seriousness of the Problem**
Ernest gets easily frustrated in the school setting when confronted with a challenging situation or academic work

**Duration**  Mornings       **Frequency**  once per week       **Intensity**  Moderate 

**Identify specific characteristics of the behavior that is interfering with learing.**
E___ will shut down (not attempt to do the work)
E___ will begin crying

**Collect information on:** Time when the behavior does/does not occur, Location of behavior, Conditions when the behavior does/does not occur, Individuals present (when most/least likely to occur); Events or conditions that typically occur before the behavior; Events or conditions that typically occur after the behavior; Common setting events; Other behaviors that are associated with the problem behavior.

**What environmental conditions may affect the behavior?**
When something challenging is occurring in his home life
When a challenging situation is present at school

**What does the student view as positive reinforcement?**
-one-one-one teacher attention
-verbal praise
-tangible rewards

**What interventions were previously attempted, and what were the results?**
Having an adult talk to E████, results in some positive behavior change.
When an adult gives E████ step-by-step instruction, results in positive behavior change.

---

☑ **Direct Assessment**
   ☑ **Scatterplots**   ☐ **ABC Charts**   ☐ **Rating Rubic**   ☐ **Amount versus quality of behavior**
☑ **Indirect Assessment**
   ☐ **Interviews**   ☑ **Questionnaires**   ☐ **Surveys**

---

**Analyze information using triangulation and/or problem pathway analysis.**
When E████ is confronted with what he perceives as a challenging situation, E████ becomes easily frustrated which results in him shutting down and not attempting to do classwork or he begins crying.

**Generate a hypothesis statement regarding probable function of problem behavior.**
**Test the hypothesis statement regarding the function of the problem behavior.**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

**MDT REFERRAL DATE:**                                    **MEETING DATE:** 11/14/2006
**STUDENT:**  H____, E____    **SCHOOL:**  Rock Creek Academy

| PARTICIPANTS | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mrs. Constantian | _____ | Occupational Therapy |
| Ms. Page | _____ | IEP Coordinator |
| Mrs. Haley | _____ | Speech Language |
| Ms. Millis | _____ | Educational Advocate |
| Mrs. Anderson | _____ | Clinical Therapy |
| Mrs. Kepple | _____ | Special Educator |

The purpose of today's meeting is review his speech and educational, devise SEP, and get an overall idea of how he is doing. The team is concerned about his executive functioning. The team needs to rule whether or not if he has ever sustained a head injury or if it's ADHD.

Mrs. Constantian, OTR/L: Mrs. Constantian revised E____ goals, because his previous goals didn't meet his needs. His previous goal was to improve visual attention, but this isn't his area of need. In terms of his written communication he is doing quite well. In terms of the new goals he also have difficulty with fine motor skills and visual preceptual skills. E____ has started working on cursive letters. Mrs. Constantian is also recommending that he has a current evaluation.

Mrs. Haley, CCC-SLP: He was given a speech evaluation that was given by Ms. Khabo, CCC-SLP. He measure well on the Golden Fristoe. He has real trouble finding words and expressing himself. The goals that were written is directly toward his needs. He has extreme difficulty putting his thoughts together. His expressive is 4 years below his age equivalent. He was able to experience some success taking the CELF evaluation. E____ has difficulty retrieving, organizing, and managing his thoughts. He has an oral language disorder. He has low average receptive language skills. His services should be increased to 90 mins. per/wk. His overall critical thinking skills you have to do a lot of hand hold him with it.

Mrs. Anderson, Clinical Therapist: In therapy, he is the first one to get involved with someone elses affairs. Normally he's not aggressive, but when he displays this type of behavior it normally causes a problem with the other students. Mrs. Anderson will update his behavior intervention plan to address his impulses.

Ms. Johnson, Special Educator: E____ works hard, but often time he forgets what he suppose to do. He is a willing worker, but he often needs redirection. One of his greatest weakness is him constantly being involved in someone elses affairs. In addition, E____ is easy distraction. He has impulses that he can't keep his hands to himself.

Team has determined that his disability should change from Specific Learning Disability to Multiple Disable to include (i.e. LD and SLI). He will receive 1.5 hours per/wk of speech, 1 hour per/wk of clinical, 25 hours per/wk of specialized instruction, and 45 mins. per/wk of OT. The MDT wants him to have a neuropsychological evaluation and OT.

Mrs. Kepple, E____ has a strong sight word vocabulary. He seems to enjoy sentences. E____ is the oldest sixth grader in the class and he present himself as a leader. Sometimes he tries to be a leader a little to much and has to be redirected.

Comp ed. Discussions: With the new evaluation that was completed on April 3, 2006 his speech hours were increased from one hour to one point five hours per/wk. Parent and advocate was prepared to move forward to have comp. ed. discussion, however DCPS wasn't in attendance to move forward. Parent and advocate are requesting an independent tutor.

THE PARENT ☐ IS PRESENT ☑ IS NOT PRESENT AT THE MEETING
AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT  H____, E____
☑ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION
☐ IS TO BE EXITED FROM SPECIAL EDUCATION



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | Doug Tyrka, Esq. | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 265-4260 | **Date:** | January 10, 2007 |
| **Phone:** | | **Pages:** | ___ (Including cover page) |
| **Re:** | F█████ H████ | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

DCPS 5 day disclosure

38

# hp LaserJet 9050mfp series



| Fax Call Report | 1 |
|---|---|

DCPS Office of General Counsel
2024425098
10-Jan-2007 03:06 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| 2640 | 10-Jan-2007 02:59 PM | Send | 92654264 | 6:52 | 21 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| **To:** | Doug Tyrka, Esq. | **From:** | Saurabh Gupta, Esq. |
|---|---|---|---|
| **Fax:** | 265-4260 | **Date:** | January 10, 2007 |
| **Phone:** | | **Pages:** | ___ (Including cover page) |
| **Re:** | ▮▮▮ H▮▮ | **CC:** | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

**•Comments:**

DCPS 5 day disclosure

39



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**January 10, 2007**

Saurabh Gupta
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232
By Fax: 202-442-5097/5098

 RE:    E███ H██ (D.O.B. ███/95)

Mr. Gupta:

 A hearing has been scheduled for **1:00 p.m. on January 18, 2007**, to adjudicate a due process complaint filed on behalf of the above-captioned student, E███ H███  In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

Documents:

1. 01/10/07   Disclosure Letter
2. 01/10/07   Notice Compelling DCPS Witness(es)

**Administrative Record**

3. 11/16/06   Due Process Complaint Hearing
4. 12/01/06   DCPS Response to Due Process Complaint Notice
5. 12/14/06   Hearing Notice

**IEPs, MDT Notes, Etc.**

6. 11/14/06   IEP
7. 11/14/06   MDT Meeting Notes

**Evaluations**

8. 03/09/05   Functional Behavioral Assessment and Behavioral Intervention Plan
9. 04/03/06   Speech and Language Evaluation

**Correspondence**

EH1
40

10. 10/31/06    Meeting Confirmation
11. 12/18/06    Official Student Records Request

Witnesses:[1]

1. Ms. Theresa Hart, Parent; 202-610-0977
2. Ms. Geny Delos Santos, Rock Creek Academy; 4401 Connecticut Avenue NW 3rd Floor, Washington, DC 20008; 202-378-1356
3. Ms. Arvette Page, IEP Coordinator, Rock Creek Academy; 4401 Connecticut Avenue NW 3rd Floor, Washington, DC 20008; 202-378-1388
4. Ms. Sharon Millis, Special Education Advocate & Expert; Tyrka & Associates, LLC
5. Mr. Keith Coyle, Associate; Tyrka & Associates, LLC
6. Ms. Camille McKenzie, Office Assistant; Tyrka & Associates, LLC
7. Mr. Michael Tchorni, Law Clerk; Tyrka & Associates, LLC

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

---

[1] Some witnesses may be testifying by telephone and/or use a designee. The address and phone numbers for all employees or agents of Tyrka & Associates can be found in the letterhead for this correspondence.

```
                    TRANSMISSION VERIFICATION REPORT

                                              TIME  : 01/10/2007 18:17
                                              NAME  : TYRKA & ASSOCIATES
                                              FAX   : 2022654264
                                              TEL   : 2022654260
                                              SER.# : 000A6J693992


        DATE,TIME                   01/10  18:05
        FAX NO./NAME                OGC2
        DURATION                    00:11:29
        PAGE(S)                     41
        RESULT                      OK
        MODE                        STANDARD
                                    ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Saurabh Gupta ~ OGC

*Fax Number:*

*From:*           Douglas Tyrka

*Regarding:*      

*# of pages:*     41

*Notes:*          DISCLOSURE

42



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

January 10, 2007

Saurabh Gupta
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

      **RE:    E███ H██ (D.O.B. ████/95)**

Ms. Harris-Lindsey:

      Pursuant to 34 C.F.R. § 300.509(a)(2) and D.C. Mun. Regs. tit. 5 § 3031.1(b), Petitioner hereby compels the following necessary and material witnesses:

1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.

                                   Respectfully submitted,

                                   Douglas Tyrka, #467500
                                   Tyrka & Associates, LLC
                                   1726 Connecticut Ave NW, Suite 400
                                   Washington, DC  20009
                                   (ph) (202) 265-4260
                                   (f) (202) 265-4264

Ef
43

## DUE PROCESS COMPLAINT NOTICE
In re E████ H████
**November 16, 2006**

| | |
|---|---|
| **Petitioner:** | Theresa Hart |
| **Student:** | E████ H████ |
| **DOB:** | ████95 |
| **Current School:** | Rock Creek Academy ("RCA") |
| **Residence:** | 1223 Holbrook Street, N.E., #3 |
| | Washington, DC 20002 |

**Petitioner's Contact Information for Special Education Purposes:**
Tyrka & Associates, LLC
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to timely conduct current evaluations in all areas of suspected disability.
2. Failure to timely review current evaluations in all areas of suspected disability.
3. Failure to timely develop an appropriate individualized education plan ("IEP").
4. Failure to timely provide all necessary special education and related services.

**Facts:**

1. On March 9, 2005, an independent functional behavioral assessment ("FBA") of E████ was completed.
2. E████'s March 9, 2005 independent FBA recommended another assessment in six months to evaluate his progress.
3. DCPS has not completed the additional assessment recommended in B████'s March 9, 2005 FBA.
4. A current FBA of E████ is warranted.
5. On April 3, 2006, RCA completed a current speech and language evaluation of B████.
6. On November 14, 2006, RCA convened a multidisciplinary team ("MDT") meeting to, *inter alia*, review the results of B████'s April 3, 2006 speech and language evaluation for the first time.
7. DCPS was invited to but did not attend the November 14, 2006 MDT meeting.
8. At the November 14, 2006 meeting:
   a) the attending members of the MDT:
      i) reviewed the results of E████'s April 3, 2006 speech and language evaluation;
      ii) increased the hours of speech and language services prescribed on his IEP from sixty (60) to ninety (90) minutes per week;
      iii) determined that an additional disability classification of Speech and Language Impaired ("SLI") was warranted;

iv) changed his current disability classification from Specific Learning Disability ("LD") to Multiply Disabled ("MD");

v) were prepared to discuss and determine E███'s need for compensatory education services based on the results of his April 3, 2006 speech and language evaluation and the subsequent increase in services prescribed in his current IEP;

vi) could not discuss E███'s eligibility for compensatory education services for missed speech and language therapy since April 3, 2006 due to DCPS' absence;

b) the Petitioner's advocate requested that E███'s compensatory education services for missed speech and language therapy since April 3, 2006 be provided by an independent provider of the Petitioner's choosing.

9. DCPS has never:

a) discussed or determined E███'s eligibility for compensatory education for missed speech and language therapy from April 3, 2006 to November 14, 2006;

b) developed an appropriate compensatory education plan to compensate E███ for missed speech and language therapy from April 3, 2006 to November 14, 2006.

**Proposed resolution:**

1. DCPS to immediately fund an independent FBA of E███.

2. DCPS to immediately convene an MDT meeting to develop an appropriate compensatory education plan to compensate E███ for missed speech and language therapy from April 3, 2006 to November 14, 2006.

3. DCPS to reconvene the MDT within ten (10) days of receiving E███'s independent FBA to:

a) review the results of this assessment;

b) revise his current IEP and behavior intervention plan as warranted;

c) develop an appropriate compensatory education plan to compensate E███ for its failure to conduct and review a current FBA of E███ since September 9, 2005.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that a representative of the LEA with authority to:

a. immediately fund an independent FBA of E███,

b. immediately schedule an MDT meeting to develop an appropriate compensatory education plan to compensate E███ for missed speech and language therapy from April 3, 2006 to November 14, 2006, and

c. reconvene the MDT within ten (10) days of receiving E███'s independent FBA

is a necessary attendee at any resolution meeting.

2. If this individual is not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individual is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

45

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

46

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT       │
└─────────────────────────────────────────┘

                              TIME  : 11/16/2006 13:28
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────┐
│  DATE,TIME                    11/16  13:27                 │
│  FAX NO./NAME                 SHO                          │
│  DURATION                     00:01:08                     │
│  PAGE(S)                      04                           │
│  RESULT                       OK                           │
│  MODE                         STANDARD                     │
│                               ECM                          │
└──────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

*Recipient:*     SHO

*Fax Number:*

*From:*          Douglas Tyrka

*Regarding:*     E████ H███

*# of pages:*    4

*Notes:*         Due Process Complaint

47

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs

E█████ H████
DOB: ███/95

     Petitioner,

v.

District of Columbia Public Schools

     Respondent

### District of Columbia Public School's Response to
### Parent's Administrative Due Process Complaint Notice

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Administrative Due Process Complaint Notice ("Complaint") filed on or about November 16, 2006 on behalf of the parent of E███ H██, DOB: ███/95, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1415(c)(2)(B)(i)(II).[1] Specifically, DCPS asserts the following:

1.    DCPS denies that there was a failure to conduct current evaluations in all areas of suspected disability. The student has undergone several evaluations in the past two years, including a clinical psychological, educational, Functional Behavior Assessment, social History, psycho-educational, speech/language and occupational therapy evaluations. A Multidiciplinary Team ("MDT") gathered on November 14, 2006 and recommended that a neuropsychological and another occupational therapy evaluation are conducted. A Student Evaluation Plan ("SEP") was developed.

2.    DCPS agrees that there was a failure to timely review the current evaluations, however a MDT meeting was held on November 14, 2006 to review the conducted evaluations and revisions to the IEP were made.

3.    DCPS denies the claim of failure to timely develop an appropriate Individual Education Plan ("IEP"). After review of the evaluations previously conducted, an IEP was revised increasing the number of speech hours from one hour per week to one and a half (1.5) hours per week. The classification of the student's disability changed as well from Specific

[1] DCPS acknowledges that this response was required to be filed on or before November 27, 2006; however, the delay in filing this response has not impacted the student's educational program or services. Therefore, it is the position of this agency that the delay in providing said response has not resulted in a denial of FAPE to the student.

Learning Disability to Multiple Disabled to include Learning Disability and Speech Language Impaired. He is currently also receiving related services in the areas of speech, clinical, specialized instruction and occupational therapy.

      4.      DCPS denies the claim of failure to provide all necessary special education and related services. As stated in my previous answer, the student is receiving twenty-seven and a half (27.5) hours per week of special education and related services. The only adjustment that was made was an additional half hour a week for speech services.

      5.      The request for a compensatory education plan is premature at this time, as there has been no showing by the parent that the student has lost services due the team not conducting the evaluation, to date; and

      6.      Attorney fees are only payable to the prevailing party and, as of the filing of the complaint, the parent has not been determined to be the prevailing party.

Date: December 1, 2006

Submitted by:

*Quinne Harris-Lindsey*/signed electronically
Quinne Harris-Lindsey, Esquire
Supervisory Attorney Advisor
c/o Ann J. Williams
Senior Paralegal Specialist
Office of the General Counsel
DC Public Schools
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002
(202) 442-5166 – direct
(202) 442-5097/8 - fax

## CERTIFICATE OF SERVICE

I, Quinne Harris-Lindsey, Esq., hereby certify that a copy of DCPS' Response to the

Administrative Due Process Complaint Notice was served on December 1, 2006 on Douglas

Tyrka, Tyrka & Associates, LLC, via facsimile at 202/265-4264.


*Quinne Harris-Lindsey*/signed electronically

Quinne Harris-Lindsey, Esquire
Supervisory Attorney Advisor
c/o Ann J. Williams
Senior Paralegal Specialist



> Office of the General Counsel
> 825 North Capitol Street, NE
> Room 9095
> Washington, DC 20002
> (202) 442-5000 main
> (202) 442-5166 direct
> (202) 442-5097/8 fax

# Fax

| To: | Douglas Tyrka | From: | Ann J. Williams |
|---|---|---|---|
| | Tyrka & Associates, LLC | | Senior Paralegal Specialist |
| Fax: | 202/265-4264 | Date: | December 1, 2006 |
| Phone: | 202/265-4260 | Pages: | 3 |
| Re: | E. H█ Response | CC: | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *D. TYRKA*    Fax No.: *265- 4264*

LEA Legal Counsel: *OGC*

RE:    *H___, E___*    and (LEA) DOB: *__/95*
Student's Name

FROM:    **SHARON NEWSOME**
Special Education Student Hearing Office Coordinator

DATE SENT:    *12/14/06*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on *11/16/06*. Please be advised that the hearing has been scheduled for:

DATE:    *1/18/07*

TIME:    *1:00 pm*

AT:    825 North Capitol Street, NE, Washington, DC
8th Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[X] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least *five business days* prior to the hearing with copies to the Special Education Student Hearing Office.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

| II. CURRENT INFORMATION | |
|---|---|
| Date of IEP Meeting: | 11/14/2006 |
| Date of Last IEP | 3/7/2006 |
| Meeting: | |
| Date of Most Recent | 3/7/2006 |
| Eligibility Decision: | |

## I. IDENTIFICATION INFORMATION

Student Name: Last _H___ First: _E____ MI: __
StudentID: _9074804_ Soc. Sec. No.: _____ Age: _11_ Grade: _06_
Gender: _M_ Date of Birth: ____1995_ Ethnic Group: _Black_
Address: _1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_
☐ Non-attending
Attending School: _Rock Creek Academy_ Home School: __
☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS
Parent: _Theresa Hart_

Address of: ☑ Parent ☑ Guardian ☑ Surrogate
_1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_
Telephone: Home _202-610-0977_ Telephone: Work __

Purpose of IEP Conference:

☑ Initial IEP     ☑ Review of IEP

☑ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)
☑ BEHAVIOR        ☑ ESY
☑ TRANSPORTATION  ☐ TRANSITION

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Language | Oral N/A |
| Parent | English | English | English | Native Language | Rdg./Written |
| Home | English | English | English | Native Language | Instrument |
| | | | | | Date |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | FREQUENCY | | PROVIDER | BEGINNING DATE | DURATION | |
|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total Hr./Min | D/W/M. | (by discipline) | mm/dd/yyyy | # | wks/mos |
| Specialized Instructions | ☑ | ☑ | 24.55 | hr W | Special Educator | 11/14/2006 | 11 | mos. |
| Speech Language | ☑ | ☑ | 1.5 | hr W | Speech Pathologist | 11/14/2006 | 11 | mos. |
| Psychological Counseling | ☑ | ☑ | 1 | hr W | Social Worker/Psychologist | 11/14/2006 | 11 | mos. |
| Occupational Therapy | ☑ | ☑ | 0.45 | min W | Occupational Therapy | 11/14/2006 | 11 | mos. |
| Total | | | 27.5 Hours Per Week | | | | | |

### V. DISABILITY(IES) Specific Learning Disability, Speech/Language Impairment

☑ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☐ 21-60% ☑ 61-100%
Percent of time NOT in Regular Education Setting _100%_

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

| | |
|---|---|
| Ms. Johnson, Special Educator | _Barbara A. Johnson_ |
| Mrs. Anderson, Clinical Therapist | _Paula Anderson_ |
| Ms. Kepple, Special Education | _Natalie Huck-Kepple_ |
| Mrs. Haley, CCC-SLP | _Eileen Haley_ |
| Ms. Arvette D. Page, IEP Coordinator | _____ |
| Ms. Millis, Ed. Advocate | _Sharon Millis_ |
| Mrs. Constantian, OTR/L | _Kari Constantian OTR/L_ |

☑ *I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of hte procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature_____ Date_____

**EH6**

https://www.e-ieppro2.com/rca/IEPDesigner/PrintIEPSelections.asp?ID=395

## VII. PRESENT EDUCATIONAL PERFORMANCE LEVELS IN AREAS AFFECTED BY THE DISABILITY

**Academic Areas: (Evaluator)**Ms. Annunziata

**Math Strengths:**
E⬛ has a great interest in math. E⬛can add with regrouping and subtract multi-digit numbers. He can read and write 5 digit numbers. His motivation & hardwork in the classroom continue to help him in his success.

**Impact of disability on educational performance in general education curriculum:**
E⬛s disability presents a struggle for E⬛ to process infromation correctly. E⬛ responds well to one on one time in math to effectively understand. E⬛ also sppeds through problems and makes careless mistakes. He has not mastered his multiplication facts, subtraction with regrouping or division.

**Reading Strengths:**
E⬛know his consonant, vowel and digraph sounds and can blend them to form words. He can read simple stories with some fluency and works hard to please the adults present. E⬛has a strong sight word vocabulary.

**Impact of disability on educational performance in general education curriculum:**
E⬛'s disability impacts his performance. He struggles with decoding and encoding words. E⬛ does not always apply what he knows without prompts. He continues to write sentences without capitalizing the first letter of each or use of pnuncation.

| Score(s) When Available | | |
|---|---|---|
| Math Cal. | 78 | 2.8 |
| Math Rea. | 79 | 2.1 |
| Date | 4/18/2006 | |
| Rdg. Com | 75 | 1.9 |
| Rdg. Basic | 65 | 1.9 |
| Written Ex. | 73 | 2.3 |
| Date | 4/18/2006 | |

**Communication (Speech & Language): (Evaluator)**

**Strengths:**
E⬛s relative strength is his receptive language skills and his ability to execute oral commands containing concepts of functional language.

**Impact of disability on educational performance in general education curriculum:**
His expressive language skills in terms of knowledge of grammatical usage makes it difficult for him to express himself.

| Score(s) When Available | | |
|---|---|---|
| Exp. Lang. | 59 | CELF |
| Rec. Lang. | 66 | CELF |
| Artic. | wnl | |
| Voice | wnl | |
| Fluency | wnl | |
| Exp. Voc. | 72 | EOWPVT |
| Rec. Voc. | 78 | EOWPVT |
| Date | 1/30/2004 | |

**Motor/Health: (Evaluator)**Ms. Poindexter, OTR/L

**Strengths:**
Motivated and cooperative. He demonstrates good effort during all attempts to complete assignments upon request.

**Impact of disability on educational performance in general education curriculum:**
E⬛presents with difficulty in written communication and attending which may negatively impact classroom participation and work assignments.

| Score(s) When Available |
|---|
| —  — |
| —  — |
| Date __ |

**Social Emotional Behavioral Areas: (Evaluator)**

**Strengths:**
Able to follow rules in therapy sessions and works cooperatively in a group setting w/peers.

**Impact of disability on educational performance in general education curriculum:**
E⬛ gets easily frustrated which causes him to engage in off-task behaviors

| Score(s) When Available |
|---|
| —  — |
| —  — |
| Date __ |

**Cognitive/Adaptive Behavior: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| Score(s) When Available |
|---|
| —  — |
| Date __ |

**Prevocational Skills: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| Score(s) When Available |
|---|
| —  — |
| Date __ |

VIII. SPECIALIZED SERVICES

Goal Number: _1_
Area Addressed By Goal: _Math_

**ANNUAL GOAL: (including mastery criteria)**
E█████ will show 6 months growth in math skills as measured by the Woodcock Johnson Test of Achievement Broad Math Cluster score.

**Provider(s):** Specail Education Teacher

☑ Portfolio  ☑ Log  ☑ Chart  ☑ Test  ☑ Documented Observation  ☑ Report  ☑ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will wrtie and read 7 digit numbers with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
When solving word problems, E█████ will identify procedure (addition, subtraction, multiplication or division) with 80% accuracy in 9 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will tell time on an analog clock to the minute with 80% accuracy in 4 out of 5 trials. .
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will solve a multi-digit by a single digit division problem with and without a remander.
**Date Mastered:  Evaluation Schedule:** __

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will read and interpret grade aoppropriate graphs with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will identify common measurement of time(ex.365 days /year), length(ex. 12 inches in a foot), weight(16 oz in a pound) with 809% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
H██ E█████ will demonstrate an understanding of fractions by correctly drawing and recognizing pictorial representations of them 80% of the time.
**Date Mastered:  Evaluation Schedule:** __

**VIII. SPECIALIZED SERVICES**

---

ANNUAL GOAL: (including mastery criteria)                                          Goal Number: _3_
H▮▮, E▮▮▮ will improve visual motor, visual perceptual and fine motor skills for greater success in academic assignments    Area Addressed By Goal: _Occupational Therapy_
and functional activities a s evidenced by a one year improvement over baseline.
**Provider(s):** Occupational Therapist

☑ Portfolio  ☑ Log  ☑ Chart  ☑ Test  ☑ Documented Observation  ☑ Report  ☐ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮ will copy a paragraph of 4-5 sentences without skipping lines, omitting words or letters on 4/5 trials.
**Date Mastered:   Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮ will demonstrate visual closure skills in simple shape/designs with 80% accuracy on 4/5 opportunities.
**Date Mastered:   Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮ will demonstrate improved visual memory by recalling the shape of lower case cursive letters with 80% accuracy on
4/5 trials.
**Date Mastered:   Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮ will demonstrate the functional motor skills necessary to write a legible, consistent, cursive signature on 8/10 trials.
**Date Mastered:   Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮ will demonstrate improved separation of the two sides of the hand to complete fine-motor manipulative tasks with
increased fluidity, speed, and accuracy on 4/5 trials.
**Date Mastered:   Evaluation Schedule:** _Monthly_

**ANNUAL GOAL: (including mastery criteria)**  Goal Number: __1__
Area Addressed By Goal: __Reading__

E▓▓▓ will show 6 months improvement in reading based on the Woodcock Johnson Test of Achievement, Broad Reading cluster score..

**Provider(s):** Special Education Teacher

☑ Portfolio  ☒ Log  ☒ Chart  ☑ Test  ☑ Documented Observation  ☒ Report  ☒ Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will ask himself questions to monitor meaning; Does that sound write?, Does that look right?, Does that make sense?
**Date Mastered:  Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will demonstrate awareness of puncuation by pausing, phrasing, and reading with inflection with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will reread to search for meaning with 80% accuracy in 4 out of 5 trials.
**Date Mastered:  Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will use sound/ letter relationships, known words, and word parts to figure out new words with 80% accuracy in 9 out of 10trials.
**Date Mastered:  Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
Before and during reading E▓▓▓ will make predictions with 80% accuracy in 9 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▓▓▓ will describe author's purpose with 80% accuracy in 9 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** __Monthly__

https://www.e-ieppro2.com/rca/IEPDesigner/PrintIEPSelections.asp?ID=395
11/14/2006

**VIII. SPECIALIZED SERVICES**

---

| | Goal Number: _1_ |
|---|---|
| **ANNUAL GOAL: (including mastery criteria)** | **Area Addressed By Goal:** _Social Behavioral_ |

E█████ will exhibit improved control over emotions as demonstrated by the mastery of the following objectives 80% of the time.

**Provider(s):** Psychologist/Social Worker/Therapist

☑Portfolio  ☑Log  ☑Chart  ☑Test  ☑Documented Observation  ☑Report  ☑Other Quarterly Progress Report

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In the school setting, E█████ will verbalize his feelings of frustration and anger to an adult instead of acting them out in 4 out of 5 instances.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy sessions, E█████ will identify situations where he becomes angry or frustrated in 4 out of 5 given opportunities.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E█████ will identify and demonstrate three effective ways to handle his anger and frustration over a one month period.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E█████ will practice relaxation techniques which he can use to calm down when feeling angry or frustrated in 4 out of 5 opportunities.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**VIII. SPECIALIZED SERVICES**

---

**ANNUAL GOAL: (including mastery criteria)**                                  Goal Number: __2__
████ will demonstrate the ability to verbally express feelings of sadness as demonstrated by the mastery of the following     **Area Addressed By Goal:** __Social Behavioral__
objectives 80% of the time.
**Provider(s):** Psychologist/Social Worker/Therapist

☒Portfolio  ☒Log  ☒Chart  ☒Test  ☑Documented Observation  ☒Report  ☒Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will establish a trusting relationship with his therapist as evidenced by sharing feelings spontaneously 2-3 times per session.
**Date Mastered:**  **Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will identify triggers that make him feel sad in 4 out of 5 given opportunities.
**Date Mastered:**  **Evaluation Schedule:** __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E████ will express feelings of sadness or hurt through play and/or through art at least twice per month.
**Date Mastered:**  **Evaluation Schedule:** __Monthly__

**ANNUAL GOAL: (including mastery criteria)**                    Goal Number: _3_
                                        Area Addressed By Goal: _Social Behavioral_
E████ will improve his ability to develop and maintain positive interpersonal relationships as demonstrated by the mastery of the following objectives 80% of the time.
**Provider(s):** Psychologist/Social Worker/Therapist

☑Portfolio   ☑Log   ☑Chart   ☑Test   ☑Documented Observation   ☑Report   ☑Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will be able discuss current interpersonal relationships (i.e. peers, sibling, family, etc.) with therapist in 4 out of 5 sessions.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will identify at least three ways to develop and maintain positive relationships over a one month period.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
In therapy, E████ will role play positive interpersonal interactions twice per month.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E████ will implement positive interpersonal skills learned in counseling evidenced by 0 incidents of verbal or physical aggression towards peers in 4 out of 5 instances.
**Date Mastered:**  **Evaluation Schedule:** _Monthly_

**VIII. SPECIALIZED SERVICES**

ANNUAL GOAL: (including mastery criteria)            Goal Number: _1_
Ernest improve his expressive language skills with 80% accuracy.    Area Addressed By Goal: _Speech/Language_
**Provider(s):** Speech Language Pathologist

☒Portfolio ☒Log ☒Chart ☒Test ☑Documented Observation ☒Report ☑Other Quarterly Progress Report

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to use correct irregular plural forms with in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to use comparative and superlative constructions in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to use possessive pronouns in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to formulate complete sentences when given a noun and a verb in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to use adverbs and adjectives in simple sentences in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to to use conjunctions in simple sentences in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to identify 3 details of a short narrative in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**
E▮▮▮will be able to express the relationship between words in 8 out of 10 trials.
**Date Mastered:  Evaluation Schedule:** _Monthly_

## VIII. SPECIALIZED SERVICES

Goal Number: __1__

**ANNUAL GOAL: (including mastery criteria)**                    Area Addressed By Goal: __Written Language__

E███ will increase his written language skills by 6 months as measured by the Woodcock Johnson test of Acheivement Written expression cluster score.

**Provider(s):**

☒Portfolio  ☒Log  ☒Chart  ☒Test  ☒Documented Observation  ☒Report  ☒Other

---

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**

E███ will use capitalization when begining a sentence, writing names and writing the pronoun "I" 80% of the time in 4 out of 5 trials.

Date Mastered:   Evaluation Schedule:  __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**

E███ will spell from weekly grade appropriate spelling list that apply spelling patterns with 80% accuracy in 4 out of 5 trials.

Date Mastered:   Evaluation Schedule:  __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**

When writing sentences, E███ will end them in correct puncuation (?,., !).

Date Mastered:   Evaluation Schedule:  __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**

E███ will write a paragraph with details supporting an idea with 80& accuracy in 4 out of 5 trials.

Date Mastered:   Evaluation Schedule:  __Monthly__

**SHORT-TERM OBJECTIVE: (including mastery criteria or benchmarks)**

After writing E███ will proof and revise his work with 80% accuracy in 4 out of 5 trials.

Date Mastered:   Evaluation Schedule:  __Monthly__

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINITATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ○ Yes
◉ No

Explanation for removal out of regular education classroom.
Student's emotional needs were not being met in the general ed. setting.

## X. SUPPLEMENTAL AIDS AND SERVICES

| CLASSROOM NEEDS (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr.Min | D/W/M | | |

Check and list modifications and/or accommodations for <u>testing</u>: ☒ None Needed

| | |
|---|---|
| Timing/Scheduling: | Extended Time |
| Setting: | Small group setting |
| Presentation: | Repeated directions |
| Response: | Extended time |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS

☒ Level I — Tested with non-disabled peers under standard conditions without accommodations.
☒ Level III — (Describe non-uniform conditions for levelII) Tested under non-standard conditions with permissible accommodations.
☒ Level V — Portfolio:

☒ Level II — (Describe accommodations for level II) Tested under standard conditions with special accommodations.
☒ Level IV — (Describe the alternative assessment)

## XII. AREAS REQUIRING SPECIALIZED INSTRUCTION AND RELATED SERVICES:

☑ Reading        ☑ Physical              ☑ Transition            ☑ Language Arts/English
☑ Mathmatics     ☑ Social Emotional      ☑ Vocational            ☑ Social Sciences
☑ Written Expression  ☑ Physical Development  ☑ Independent Living  ☑ Biolocial & Physical Science
☑ Other          ☑ Speech/Language       ☑ FineArts
☑ None     Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | ○ Accept ○ Reject | Continued School Failure |
| General Ed/Combination | ○ Accept ○ Reject | Continued School Failure |
| Out of genreal education | ○ Accept ◉ Reject | Impact on Self-esteem |

Modifications(s)/Accommodation(s) to address the harmful effects:
Student's self-esteem can be addressed in clinical therapy.
Location for Services: Rock Creek Academy

## DOCUMENTED LEVEL OF SERVICE (PERM)
### Complete and attach to MDT/IEP meeting notes

School: _Rock Creek Academy_   Principal: _Semanthe Bright_   Special Education Coordinator: _Ms. Page_
Date: _3/7/2006_   Case Manager: _Ms. Anderson_   Technical Support Supervisor: __
Student: _H___ B_____1995   DOB: _____1995   Age: _11_   Grade: _06_   ID#: _9074804_   SSN#: _____
Parent: _Theresa Hart_   Telephone (H): _202-610-0977_   Telephone (W): __
Address: _1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C. 20002_

REFERRAL SOURCE: (Check)  ◯ 120 Day  ◯ Reeval  ◯ HOD  ◯ SA  ◯ MA  ◉ Nonpublic
                          ◯ Residential  ◯ Citywide  ◯ Courts  ◯ Local School  ◯ Other ____
Previous least restrictive environment (LRE Setting): __Out of general education__

### JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
#### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Small group setting, periodic breaks, extended time and repeated directions. | Current IEP | ◉ Yes | ◯ No |
| | Signatures of required participants (MDT Only) | ☑ Yes | |
| | Intervention Behavior Plan | ☑ Yes | |
| | Copies of current class work and homework assignments | ☑ Yes | |
| | Medical Reports | ◯ Yes | ◯ No |
| | Clinical Reports | ◯ Yes | ◯ No |
| | Psychiatric Reports | ◯ Yes | ◯ No |
| | Medications | ◯ Yes | ◯ No |
| | Attendance Record | ☑ Yes | |
| | Copies of most recent evaluation(s) | ☑ Yes | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes) | 5. Resources needed for program implementation |
|---|---|
| See IEP meeting notes. | N/A |

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☑ in general education classroom setting | ☑ general educators with consultation from special education staff | ☑ between 0% and 20% of service time |
| 2 | ☑ combination general education and resource classroom | ☑ combination of general educators, special educators and related service providers | ☑ between 21% and 60% of service time |
| 3 | ☑ *out of general education classroom | ☑ special educators and related service providers | ☑ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activies, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activies (300.306) to the maximum extent appropriate to the needs of that child (300.553) Nonacademic settings

#### Check the level of need as indicated:
#### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW If two or three boxes are checked in the Row 2, check MODERATE If two or three boxes are checked in the Row 3, check HIGH | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

#### 7. LEVEL OF NEED

| ◯ LOW | ◯ MODERATE | ◉ HIGH |
|---|---|---|

DISTRICT OF COLUMBIA PUBLIC SCHOOLS

TRANSPORTATION DIVISION
STUDENT TRANSPORTATION
DATA FORM

2005-2006
School Year

9074804
**STUDENT IDENTIFICATION NUMBER**

Theresa Hart
Parent / Guardian (Print legibly or type)

202-610-0977
Telephone (H)

Telephone (W)

Ms. Toloria Gant
Emergency Contact

aunt
Relationship

202-388-8502
Telephone No.

Page/Cell No.

Students will be taken to a central location until 6:00 p.m. If the bus attendants are unable to deliver them to the designated location. After 6:00 p.m. the police will be contacted. This year's central location is ___

---

IEP Attachment B
Transportation

(MDT must first determine if student meets the requirements for transportation services and has it included in the IEP

Person Making Request: __Ms. Page__
Date of Request: __3/7/2006__
Status of Request: ___
Date Request Received: ___
Person Receiving Request: ___

| H___ | | E___ | |
|---|---|---|---|
| Student Last Name | | First Name | MI |

1223 Holbrook Terrace, NE, Apt. #3
Address

Washington                    D.C.              20002
City                          State            Zip Code

___1995   M   English      Rock Creek Academy, Inc. (202) 378-1400
DOB   Gender  Primary Language   Submitting School and Telephone Number

__Specific Learning Disability__
Disability Classification          Medical Issues

MODE OF TRANSPORTATION ☑ *Bus ☑ Tokens ☑ Farecards
*SPECIAL ACCOMMODATIONS FOR BUS
Height ___ Weight ___

☑ Oxygen ☑ Tracheotomy Tube ☑ Seizures ☑ Helmet

☑ Harness ☑ 1:1 Aide ☑ Behavioral Issue ___
Medication ___ Specific Allergies ___
Dosage Required during transporation:
○ Yes ○ No   Dosage ○ PM ○ AM

☑ Mobility ☑ Ambulatory ( ☑ Cane, ☑ Crutch, ☑ Walker)

☑ Ambulatory w/ assistance ( ☑ Cane, ☑ Crutch, ☑ Walker)

☑ Non Ambulatory ( ☑ Standard, ☑ Motorized,

☑ Oversized w/lap tray ○ Yes ○ No )

☑ Car Seat               ☑ Positioning Device ___

☑ Special Restraint      ☑ Other, Describe: ___

---

Click one of the following:

☑ AM Pick-up & Drop-off is the same as the student address.

☑ AM Pick-up Address: ___ Phone: ___

☑ PM Pick-up Address: ___ Phone: ___

---

Transportation will NOT be provided without confirmed placement through the proper procedures. Justification for other than neighborhood settings must be explained on the back by the shcool oficial requesting the transportation service.

__Arvette Page__                    202-378-1400                                3/7/2006
School Official requesting transportation service:   Telephone No.                     Date
__Rock Creek Academy__        4401 Connecticut Avenue, NW Washington, DC 20008   202-378-1400
School to Attend:              Address of School                                Telephone No.

Questions may be directed to the Special Education Transportation Liaison.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

| MDT |
|---|

**CONSENT FOR EVALUATION - INITIAL OR REEVALUATION**
**(*CHECK ONE ONLY - INITIAL OR REEVALUATION)**

**I. INITIAL EVAUATION CONSENT** ☐

As a result of the review of the screening information at the MDT meeting on __11/14/2006__
It was determined in a MDT meeting that your child, __H___ E_____
is in need of a full and individual evaluation to assist us in developing the most appropriate educational
program.
You have been provided a copy of that "Procedural Safeguards - Parental Rights" booklet. We
would like to remind you at this time that:

- granting consent for this evaluation is a voluntary action on your part
- this consent may be revoked at any time although the school district is required to tak all necessary
  action to provide an appropriate program and may be required to initiate due process procedures to
  obtain content and;
- by granting consent in writing, you are agree to the evaluation(s) in Section 111.

**II. REEVALUATION** ☑

The MDT received the following request for a reevaluation for : __H___ E_____
by / for a: ☑ parent request   ☐ teacher request   ☐ 3 year reevaluation
The MDT will collect supportive documentation in the area of the disability to determine teh need for
continued special education and related services. The school is required to only evaluate in those areas of
documented need or consensus of the MDT (parent is a member of team). Parents have the right to
requirest assessments to dtermine if the child continues to be a child with a disability. DCPS may
reevaluate your child, without your consent, if the school district can demonstrate that it has taken
reasonable steps to get parental consent and the parent has not responded.

- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide
  a Free Appropriate Public Education program and may be required to initiate due process procedures to obtain
  consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) on the student evaluation plan (SEP).

**III.**   I give permission for Distric of Columbia Public Schools to proceed with the evaluation(s) based on the
Student Evaluation Plan (attached) for my child, __H___ E_____

Within a reasonable period of time days after copmletion of the evaluation, we will hold another MDT meeting (to which
you will be invited) to determine if your child is eligible for special education and related services. The written reports of all
procedures administered will be provided to you at that meeting, along with explanations and interpretations. We will use
this information to determine an appropriate program for your child. If records are to be obtained/relatesed as part of
this evaluation, the "Consent for Release of Records" form is completed and attached.
If you have questions or concerns at any time during the evaluation process, feel free to contact me
at __202-378-1388__ (telephone number)

☐INITIAL  ☑REEVALUATION
Parent Response Section:

☐ I agree to the proposed evaluation(s)   ☐ I do NOT agree to the proposed evaluation(s)

_____
Parent/Guardian Signature

__11/14/06__
Date

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

MDT | SEP

MDT REFERRAL DATE:   11/14/2006                                           MEETING DATE:   11/14/2006
STUDENT:  H    E          DOB:        1995   AGE:   11   GRADE:   06   SCHOOL:   Rock Creek Academy
STUDENT IDENTIFICATION NUMBER:   9074804   TEACHER/HOMEROOM: Ms. Kepple / Ms. Johnson
ADDRESS:  1223 Holbrook Terrace, NE, Apt. #3, Washington, D.C.  20002
PARENT(S)/GUARDIAN:   Theresa Hart / Ernest McQueen, Jr.   TELEPHONE (H):   202-610-0977   TELEPHONE (W):   ___

**Summarize Area(s) of Concern:**
MDT is concerned with his auditory processing, occupational therapy to determine his current level of functioning and neuropsycholgcial evaluation to look at his execute functioning. MDT is concerned with whether E    has ever sustained a brain injury or if he has ADHD.

**Team Recommendations:**
MDT is recommending that he should have an OT and Neuropsychological evaluation.

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE | |
|---|---|---|---|---|
| | | | ASSIGNED | DUE DATE |
| Other | ___ | Neuropsychological and OT | ___ | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
|---|---|---|---|
| Sharon Millis | Ed. Advocate | Mrs. Constantian | Occupational Therapist |
| Mrs. Haley | Speech Pathologist | Mrs. Anderson | Clinical Therapy |
| Ms. Page | IEP Coordinator | Mrs. Kepple | Special Educator |

The MDT meeting to discuss the evaluation results is scheduled on ___ at ___ in room ___

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT REFERRAL DATE:
STUDENT: H___ E___    SCHOOL: Rock Creek Academy    MEETING DATE: 11/14/2006

| PARTICIPANTS | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mrs. Constantian | Kay Constantian | Occupational Therapy |
| Ms. Page | | IEP Coordinator |
| Mrs. Haley | Helen Haley | Speech Language |
| Ms. Millis | | Educational Advocate |
| Mrs. Anderson | Paula Und | Clinical Therapy |
| Mrs. Kepple | Ms. Kepple | Special Educator |
| Ms. Johnson | Barbara Q. Johnson | Special Educator |

The purpose of today's meeting is review his speech and educational, devise SEP, and get an overall idea of how he is doing. The team is concerned about his executive functioning. The team needs to rule whether or not if he has ever sustained a head injury or if it's ADHD.

Mrs. Constantian, OTR/L: Mrs. Constantian revised E___ goals, because his previous goals didn't meet his needs. His previous goal was to improve visual attention, but this isn't his area of need. In terms of his written communication he is doing quite well. In terms of the new goals he also have difficulty with fine motor skills and visual preceptual skills. E___ has started working on cursive letters. Mrs. Constantian is also recommending that he has a current evaluation.

Mrs. Haley, CCC-SLP: He was given a speech evaluation that was given by Ms. Khabo, CCC-SLP. He measure well on the Golden Fristoe. He has real trouble finding words and expressing himself. The goals that were written is directly toward his needs. He has extreme difficulty putting his thoughts together. His expressive is 4 years below his age equivalent. He was able to experience some success taking the CELF evaluation. E___ has difficulty retrieving, organizing, and managing his thoughts. He has an oral language disorder. He has low average receptive language skills. His services should be increased to 90 mins. per/wk. His overall critical thinking skills you have to do a lot of hand hold him with it.

Mrs. Anderson, Clinical Therapist: In therapy, he is the first one to get involved with someone elses affairs. Normally he's not aggressive, but when he displays this type of behavior it normally causes a problem with the other students. Mrs. Anderson will update his behavior intervention plan to address his impulses.

Ms. Johnson, Special Educator: E___ works hard, but often time he forgets what he suppose to do. He is a willing worker, but he often needs redirection. One of his greatest weakness is him constantly being involved in someone elses affairs. In addition, E___ is easy distraction. He has impulses that he can't keep his hands to himself.

Team has determined that his disability should change from Specific Learning Disability to Multiple Disable to include (i.e. LD and SLI). He will receive 1.5 hours per/wk of speech, 1 hour per/wk of clinical, 25 hours per/wk of specialized instruction, and 45 mins. per/wk of OT. The MDT wants him to have a neuropsychological evaluation and OT.

Mrs. Kepple, E___ has a strong sight word vocabulary. He seems to enjoy sentences. E___ is the oldest sixth grader in the class and he present himself as a leader. Sometimes he tries to be a leader a little to much and has to be redirected.

Comp ed. Discussions: With the new evaluation that was completed on April 3, 2006 his speech hours were increased from one hour to one point five hours per/wk. Parent and advocate was prepared to move forward to have comp. ed. discussion, however DCPS wasn't in attendance to move forward. Parent and advocate are requesting an independent tutor.

THE PARENT ☒ IS PRESENT ☑ IS NOT PRESENT AT THE MEETING
AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT ___ H___ E___
☑ CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION
☒ IS TO BE EXITED FROM SPECIAL EDUCATION

**EH7**

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.

Katie Hennessy, Psy.D.

Julie Kovac, Ph.D.

Shelley McLaughlin, M.Ed.

Keisha Mack, Ph.D.

Nicole Sampson, Ph.D

## FUNCTIONAL BEHAVIORAL ASSESSMENT
## AND BEHAVIORAL INTERVENTION PLAN

Name:                  E███ H███
Date of Birth:         ████████ 1995
Age:                   9 years, 5 months
School:                Rock Creek Academy
Grade:                 4
Date of FBA:           March 9, 2005
Examiner:              Mercedes Ebanks, M.Ed.

### REASON FOR REFERRAL

E███ was referred for a behavioral evaluation at the request of his educational advocate and attorney, Carolyn W. Houck, Esq. Behavioral concerns include noncompliance, disruptive behaviors, inappropriate language, aggression towards peers, disrespect towards staff, and failure to complete assignments. These behaviors reportedly have occurred on a daily basis.

### SOURCES OF INFORMATION

Clinical observation
Interview with counselor, Ms. Plowden
Interview with mother, Theresa Hart
Interview with student
Interview with teachers: Ms. Johnson (reading)
                        Mr. Johnson (primary)

### BACKGROUND INFORMATION

E███ has had a history of behavior problems in school, beginning in preschool. He previously attended Charles Young Elementary School in the District of Columbia. At that school, he received numerous reprimands and suspensions. His problem behaviors included bullying others, physical and verbal aggression towards students, and disruptive behaviors in the classroom. He needed constant redirection from teachers to remain focused on assignments and to interact appropriately with peers.

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

E███'s mother, Ms. Hart, indicated that his behaviors have been a concern since he was three years old. She stated that "he fights everyday." His aggression occurs at school and in the home and the community. By parent report, his three siblings also share similar behavior problems. They currently all attend Rock Creek Academy.

E███ has attended Rock Creek Academy for approximately three weeks. Ms. Plowden, his counselor, reported that E███ has transitioned well to the new school placement. Ms. Johnson, his reading teacher, shared that E███ participates in group activities and volunteers to read. He attempts to complete all his assignments. However, she shared that he falls asleep everyday in class. She has to redirect him, but he quickly responds. Sometimes he asks to get a drink of water "to get himself together." Ms. Johnson is pleased overall with E███'s progress in her class. Mr. Johnson, his primary teacher, shared that E███ has adjusted well to his classroom. He is eager to learn and frequently asks questions. He has not presented any behavior problems. However, Mr. Johnson described him as talkative, and he has to be reminded to speak in a lower tone of voice. According to Mr. Johnson, E███ gets along well with his four classmates. He follows directions from staff. He has only had one unsuccessful day since his arrival. He is currently on level one and his target behavior is to remain quiet at all times.

## BEHAVIORAL ASSESSMENT/OBSERVATION

A behavioral assessment was conducted to determine which, if any, environmental factors are influencing E███'s maladaptive behaviors. The evaluator used the Behavior Assessment System for Children - Student Observation System Checklist (BASC-SOS) to measure the frequency of the target behaviors. E███ was observed in two classes, reading and math. The results of the observation are summarized in the table below.

| Behavior | One hour observation | |
| --- | --- | --- |
| | Frequency of behavior | Minutes |
| On task | | 60 |
| Disruptions | 0 | |
| Aggression | 0 | |
| Talking | 2 | |
| Inappropriate language | 0 | |
| Out of area | 0 | |
| Redirection from staff | 2 | |

During the observation period, E███ was required to complete class assignments. As he worked, he was attentive and at times asked the teacher for assistance. In general, he completed assignments independently. He spoke appropriately with classmates and followed directions from staff.

During the interview with this examiner, E██████was cooperative and polite. He indicated that he enjoyed his new school. He understands the level system and consequences. He likes the opportunity to advance and earn privileges such as playing UNO. He earns additional rewards at home for having successful days. He stated that the teachers are kind in comparison to previous teachers. He admitted that he needs help with his homework.

## SUMMARY

Based on this behavioral assessment, E█████ has the ability to maintain appropriate behaviors in school. E██████responds to redirection and is encouraged by the current token economy program. Although E█████ is distracted, sleepy, and speaks in a loud tone, he responds well to prompts and can regain his focus on assignments. He is interested in his academic progress and completes his assignments. He is able to accept consequences for his maladaptive behaviors. E██████ is motivated by tangible reinforcers and praise. His target behaviors should include self-control behaviors, namely speaking in an appropriate tone and staying awake and alert.

E█████should continue to follow the present behavior system and earn privileges based on the level system. Further assessment should be conducted after six months to evaluate his adjustment to the current school placement. If maladaptive behaviors increase and E█████is not successful on the current system, an individual contract or Behavioral Intervention Plan (BIP) should be considered. The teachers and staff should consider the following recommendations when working with E█████ to encourage him to maintain appropriate behaviors.

**Interventions**

1.  Identify a reinforcer to reward E█████when he completes his assignments.

2.  Monitor E█████'s ability to stay on task for ten-minute increments and give frequent breaks to stand up, stretch, get a drink of water, or take a walk after completing an assignment.

3.  Incorporate E█████'s interest in talking with peers and adults.

4.  Staff should use a nonverbal cue to remind E█████of his self-control.

5.  Put E█████in a leadership position and have him work as part of a team.

**Summary of Recommendations**

1.  It is recommended that E█████continue with the school- and classroom-wide behavior system.

2.  It is recommended that E█████'s appropriate behaviors be acknowledged with tangible reinforcers and praise.



Rock Creek Academy, Inc.
4401 Connecticut Ave., NW
Washington, DC 20008
202.378.1400

## SPEECH-LANGUAGE EVALUATION

**NAME:** E▓▓▓ H▓▓
**DATE OF BIRTH:** ▓▓▓▓▓▓▓, 1995
**AGE:** 10 years, 6 months
**PRIMARY LANGUAGE:** English
**DATE OF EVALUATION:** April 3, 2006
**EXAMINER:** Beverly S. Khabo, M.A. TESOL/Bilingual Ed, M.S., CCC-SLP
                 Speech-Language Pathologist

### Purpose of Assessment

This speech-language evaluation was completed to determine present level of functioning in speech and language skills and to determine if the student continues to demonstrate an educationally significant verbal communication deficit that adversely affects his academic performance. E▓▓▓ was evaluated on an individual basis and in an environment with limited auditory and verbal distractions.

### Background Information

*Previous Evaluations*
E▓▓▓ was previously evaluated by District of Columbia Public School in January 2004. Results of the evaluation indicate that ...F▓▓▓ *demonstrates and oral language disorder, characterized by low average receptive language skills and below average expressive language skills. Below average receptive/expressive vocabulary skills were also found...*

*Family History*
E▓▓▓ is a 10 year 6 month old male who lives in Washington, DC. He currently attends Rock Creek Academy.

### Testing Observations

E▓▓▓ was evaluated at Rock Creek Academy in one testing session on April 3, 2006. Rapport was easily established between E▓▓▓ and the examiner. E▓▓▓ was cooperative throughout the testing session. E▓▓▓ attempted each test item presented to him. The results of the current evaluation are believed to be an accurate representation of his present level of functioning in the area of overall expressive and receptive language skills.

H██, E██ 

**Assessment Procedures**
Record Review
Goldman-Fristoe Test of Articulation-2 (Goldman-Fristoe-2)
Expressive One Word Picture Vocabulary Test (EOWPVT)
Receptive One Word Picture Vocabulary Test (ROWPVT)
Clinical Evaluation of Language Fundamentals-4 (CELF-4)

**Articulation/Phonological and Oral Motor Skills**
The Goldman-Fristoe-2 measures the oral production of phonemes within the English language. No misarticulations were observed.

**Receptive and Expressive Vocabulary Skills**
The purpose of the Expressive One-Word Picture Vocabulary Test (EOWPVT) is to measure a students' expressive vocabulary. The student is required to look at a picture or a group of pictures and state the name of the picture or state what action is being depicted. The student experienced difficulty with words such as: *compass, shield, writing,* and *rectangle*. He experienced success with words such as: *thermometer, cheetah, mail,* and *goat*. B██ responded with few 'I don't know' responses. E██ received an Age Equivalent Score of 4 years 6 months on this test. This Score is 6 year 0 months below his chronological age.

The Receptive One-Word Picture Vocabulary Test (ROWPVT) measures a students' receptive vocabulary. The student is required to look at a set of pictures and identify them upon hearing the word for the picture. B██ experienced a bit more success with receptive vocabulary. He experienced difficulty with words such as: *entertainer, law, even,* and *slumber*. He was able to identify words such as: *gems, octagon, inscription,* and *division*. E██ received an Age Equivalent Score of 6 years 7 months. This score is 3 years 9 months below his chronological age.

The results obtained for the EOWPVT and the ROWPVT are as follows:

|  | EOWPVT | ROWPVT |
|---|---|---|
| Standard Score | 60 | 75 |
| Confidence Interval | 55-65 | 70-80 |
| Percentile Rank | <1 | 5 |
| Stanines | 1 | 2 |
| Age Equivalent | 4 yrs 6 mos | 6 yrs 7 mos |

(Mean = 100 with standard deviation of $\pm$ 15)

In terms of Standard Scores, B██ scored 15 points higher on the ROWPVT than he did the EOWPVT. There is a 2 year 1 month difference between his Age Equivalent score, with receptive vocabulary yielding a higher Age Score of 6 years 7 months. This is typical; most students perform better on receptive vocabulary than expressive vocabulary.



**Receptive and Expressive Language Skills**

The <u>CELF-4</u> measures both receptive and expressive language skills. There are 7 receptive and expressive language subtests. On the first language subtest, **Concepts & Following Directions**, a student is required to follow a series of directives using inclusion/exclusion (all...except, all but one, all, neither/nor), location (top, next to, between), sequence (beginning, last, middle, third), condition (unless), temporal (after, before, same time, while, then) and left/right orientation. E▊ experienced success with *inclusion/exclusion, location, level 1- and 3-level commands,* and *left/right orientation*. He experienced difficulty with *sequence, temporal, serial orientation, 2-* and *4-level commands,* and *modifiers*. **Recalling Sentences**, the second subtest, requires a student to repeat sentences verbatim as presented by the examiner. He was able to repeat active declarative sentences involving *coordination, relative clause, negative, interrogative* and *interrogative with negative*. He was also able to repeat passive declarative sentences involving *negative*. E▊ experienced difficulty with passive declarative sentences involving *subordinate clause, noun modification,* and *conjunction deletion*. E▊ experienced difficulty with active declarative sentences involving *subordinate clause,* and *coordination*. The next subtest administered to E▊was **Formulated Sentences**, it requires a student to view a picture and spontaneously create a sentence using nouns, verbs, adjectives, adverbs, coordinating, subordinating, and correlative conjunctions, conjunctive verbs, and phrases. Sentences are created with words such as: *otherwise, forgot, as soon, as, as a consequence of, finally, before,* and *even though*. E▊performed fair on this subtest. He had difficulty creating sentences for words like: *until, however, as soon as, otherwise,* and *neither*. **Word Classes 2-Receptive** and **Word Classes 2-Expressive** require a student to listen to three or four groups of words and name two words that 'go together' (receptive) and explain why (expressive). Semantic class is probed with this subtest: (pillow/blanket, window/glass, school/teacher). E▊ experienced difficulty with semantic classes related to *window/glass, floor/broom, empty/full,* and *smooth/rough*. E▊ experienced equal difficulty with explaining 'why' two items go together as he did identifying which two go together. **Word Definitions** requires a student to define words as they are orally presented. E▊ experienced quite a bit of difficulty with this subtest. He was able to provide definitions for words such as: *souvenir, award,* and *tease*. He experienced difficulty with words such as: *coward, cactus, echo,* and *decade*. The final subtest presented to E▊was **Understanding Spoken Paragraphs** where he was required to listen to a total of 3 short paragraphs and respond to wh-questions. E▊was asked to respond to questions related to *main idea, prediction, detail,* and *sequence*. He experienced difficulty responding to questions related to *main idea, prediction, sequence inference* and *detail*.

74

H█████B█████ 

Individual subtest scores are as follows:

|  | Raw score | Scaled Score | %ile | Age Equiv |
|---|---|---|---|---|
| Concepts & Following Directions | 37 | 2 | 0.4 | 7:2 |
| Recalling Sentences | 50 | 6 | 9 | 7:4 |
| Formulated Sentences | 36 | 6 | 9 | 8:9 |
| Word Classes 2 Receptive | 2 | 2 | 0.4 | 6:6 |
| Word Classes 2 Expressive | 2 | 4 | 2 | 6:9 |
| Word Classes 2-Total | NA | 3 | 1 | 6:3 |
| Word Definitions | 3 | 4 | 2 | <9:0 |
| Understanding Spoken Paragraphs | 2 | 1 | 0.1 | NA |
| **Core and Index Scores** | **Sum of Scaled Scores** | **Standard Score** | **%ile** | |
| Core Language Score | 17 | 66 | 1 | |
| Receptive Language Index | 4 | 55 | 0.1 | |
| Expressive Language Index | 16 | 71 | 3 | |
| Language Content Index | 8 | 56 | 0.2 | |
| Language Memory Index | 14 | 66 | 1 | |

## Performance Analysis

E████'s performance on the Goldman-Fristoe-2 indicates an intact articulatory system. His oral motor skills are judged within normal limits. In addition, his performance on the EOWPVT and the ROWPVT indicate below average vocabulary skills. The CELF-4 indicates scattered receptive and expressive language skills.

## Pragmatic Language Skills

E████ was cooperative during testing. He was able to ask for information, participate in conversation, utilize appropriate, but minimal, eye contact, and utilize turn taking. He appears as a shy child.

## Spontaneous Language

E████ was able to engage in conversational speech with the examiner. He demonstrated the ability to initiate, terminate, and change topics of discussion and to respond properly to questions asked of him.

## Articulation and Oral Motor Skills

As previously indicated, E████'s articulation skills are within normal limits and age appropriate. Oral motor skills are also judged within normal limits.

## Voice and Fluency Skills

E████ demonstrated voice and fluency skills within normal limits during the testing session.

II, E___

## Summary and Impressions

E___ is a 10 year 6 month old young male who was evaluated to determine present level of functioning of his speech and language skills and to determine if he demonstrates an educationally significant verbal communication deficit that adversely affects his academic performance for continuation of services. Test results indicate age and gender appropriate voice and appropriate fluency skills. Testing further indicates below average receptive and expressive vocabulary. Receptive and expressive language skills are scattered. On the EOWPVT, E___ scored 6 years 0 months below his chronological age and 3 year 9 months below his chronological age on the ROWPVT. On the CELF-4, E___ scored two (2) standard deviations below the mean on **Recalling Sentences , Formulated Sentences, Word Classes 2- Expressive, and Word Definitions.** He scored three (3) standard deviations below the means on **Concepts & Following Directions, Word Classes 2- Receptive, and Understanding Spoken Paragraphs.** E___ willingly attended the testing session with the examiner and was cooperative throughout. He complained of being sleepy and wanting to return to class. He attempted each test item presented to him.

## Recommendations

E___ demonstrated severely impaired vocabulary skills; and receptive and expressive language skills are scattered. E___'s poor vocabulary skills and scattered receptive and expressive language test scores warrant direct speech-language intervention. This examiner understands that the MDT will meet, discuss, and make the final decision. A recommendation is made for intervention 60 minutes per week. It was a pleasure evaluating E___; he was very cooperative and pleasant.

Re-evaluation with formal and informal assessment measures is recommended on a triennial basis or upon request of the parent or educational team to monitor gains in skills and determine present level of functioning in overall communication skills and to determine the need to modify any services to best address E___'s educational needs.

Beverly S. Khabo, M.A. TESOL/Bilingual Ed, M.S., CCC-SLP
Speech-Language Diagnostician
Rock Creek Academy

76

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
## CONFIRMATION OF MEETING NOTICE

Date:  __10/31/2006__

Parent/Guardian Name:  __Theresa Hart__                    Re:  __H___ E____
Street Address:  __1223 Holbrook Terrace, NE, Apt. #3__    SCHOOL:  __Rock Creek Academy__
City:  __Washington__                                      ID NO:  __9074804__
State:  __D.C.__  Zip Code:  __20002__                     DOB:  __███1995__

Dear  __Theresa Hart__

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. Your child's meeting is scheduled as follows:

Date:  __11/14/2006__       Time:  __11:30__       Place/Location: Rock Creek Academy
                                                   4401 Connecticut Ave., NW
                                                   Washington, DC 20008

The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Invited participants are listed under MDT members.

**The purpose of this meeting is to:**

☑ **develop/review IEP(including consideration of extended school year (ESY) services)        ☐ **discuss CompEd

☑ **Review evaluation or revaluation information      ☐ discuss placement        ☐ *consider transition services needs

☐ develop the student evaluation plan (SEP)           ☐ determine manifestation  ☐ discuss quarterly review

☐ discuss documented levels of service                ☐ discuss eligibility      ☐ behavior plan review

☐ **review records to support the completion of services as follows:

☐ Graduated    ☐ Completed Services    ☑ Aged Out    ☐ Transferred Out of District    ☐ Dropped Out
☐ Other

**Placement will be discussed.

**MDT Members:**     ☐ Principal or Designee      ☐ General Education Teacher     ☐ Psychologist
                     ☑ Parent                    ☑ Special Education Teacher     ☐ Other
                     ☑ LEA Representative         ☑ Speech and Language
                     ☐ Student                    ☑ Social Worker

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate.

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact  __Arvette Page__  at  __202-378-1388__  (school telephone number).

Sincerely,

**EH10**



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

December 18, 2006

Sherie Waul
LEA for Rock Creek Academy
Office of Special Education
825 North Capitol 6th floor
Washington DC 20002
Fax: 202-442-4800

Re: E████ H████ 

Dear Ms Waul:

A due process complaint filed on behalf of this student has been scheduled to be heard at **1pm on Thursday, January 18th** . In order to meet their evidentiary burden under Section 3030.3 of Title V of the D.C. Municipal Regulations[1], the parent is respectfully requesting that your school provide copies of the following to our offices:

> All form 6s
> All standardized test scores, such as CTBS or SAT-9
> All evaluation reports and DCPS reviews, including triennial review
> IEPs, BLMDT, MDT notes, placement notices, and letters of invitations for all years in special education
> All report cards, including progress reports and attendance records
> All disciplinary records, incident reports, and manifestation determinations
> All encounter tracking forms
> A list of all of the student's special and general education teachers

Any other records or correspondence you believe are relevant.

As counsel for the parent we are entitled by law to receive and review these records. *See* 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.562;[2] D.C. Mun. Regs. tit. 5 § 3021.8;[3] D.C.P.S.

---

[1] "The burden of proof shall be the responsibility of the party seeking relief, either the parent/or guardian of a child or the LEA. Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and/or inaction or proposed placement is inadequate or adequate to provide the student with a Free Appropriate Public Education (FAPE)."
[2] "The agency shall comply with a [records] request without unnecessary delay . . ., and in no case more than 45 days after the request has been made."
[3] "A person shall have the right to examine all portions of the student's record prior to the hearing, including the right to examine and, upon request, receive copies of any test results, reports, or other data upon which the proposed action is based."

S.H.O. S.O.P. §800.2 [4] (IDEA records request provisions); 20 U.S.C. § 1232g(1)(A) (Family Educational Rights and Privacy Act of 1974).

The parent respectfully requests that our office be provided with copies of these records immediately, **and that this request be supplemented with any newly obtained records as soon as they become available.**

Please contact our offices as soon as possible to discuss and arrange the manner by which these records will be delivered.

Sincerely,

Camille McKenzie
Tyrka & Associates, LLC
1726 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

Enclosure:     Parent Authorization for Release of Documents

---

[4] "Parents have the right to examine all records maintained by the school that are related to their child. . . Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records."

79

TRANSMISSION VERIFICATION REPORT

```
TIME   : 12/18/2006 11:37
NAME   : TYRKA & ASSOCIATES
FAX    : 2022654264
TEL    : 2022654260
SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 12/18  11:35 |
| FAX NO./NAME | S.ED1 |
| DURATION | 00:02:06 |
| PAGE(S) | 04 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

*Recipient:*        Sherrie Waul ~ Office of Special Education

*Fax Number:*

*From:*              Camille McKenzie

*Regarding:*        ██████

*# of pages:*       4

*Notes:*             Due Process Hearing Records Request

| TRANSMISSION VERIFICATION REPORT |
|---|

```
                                    TIME  : 12/14/2006 17:34
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
DATE,TIME              12/14  17:34
FAX NO./NAME           92654264
DURATION               00:00:26
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *D. TYRKA*                Fax No.: *265- 4364*

LEA Legal Counsel: *OGC*

RE:    *H_____, E_____*                and (LEA) DOB: *___/__/95*
              Student's Name

FROM:    **SHARON NEWSOME**
              Special Education Student Hearing Office Coordinator

DATE SENT:    *12/14/06*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on *11/16/06*. Please be advised that the hearing has been scheduled for:

DATE:    *1/18/07*

TIME:    *1:00 pm*

81



**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

 H
DOB: ████/95

     **Petitioner,**

**v.**

**District of Columbia Public Schools**

     **Respondent**

### District of Columbia Public School's Response to
### Parent's Administrative Due Process Complaint Notice

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Administrative Due Process Complaint Notice ("Complaint") filed on or about November 16, 2006 on behalf of the parent of E███ H██ DOB: ████/95, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1415(c)(2)(B)(i)(I).[1] Specifically, DCPS asserts the following:

1.    DCPS denies that there was a failure to conduct current evaluations in all areas of suspected disability. The student has undergone several evaluations in the past two years, including a clinical psychological, educational, Functional Behavior Assessment, social History, psycho-educational, speech/language and occupational therapy evaluations. A Multidiciplinary Team ("MDT") gathered on November 14, 2006 and recommended that a neuropsychological and another occupational therapy evaluation are conducted. A Student Evaluation Plan ("SEP") was developed.

2.    DCPS agrees that there was a failure to timely review the current evaluations, however a MDT meeting was held on November 14, 2006 to review the conducted evaluations and revisions to the IEP were made.

3.    DCPS denies the claim of failure to timely develop an appropriate Individual Education Plan ("IEP"). After review of the evaluations previously conducted, an IEP was revised increasing the number of speech hours from one hour per week to one and a half (1.5) hours per week. The classification of the student's disability changed as well from Specific

---

[1] DCPS acknowledges that this response was required to be filed on or before November 27, 2006; however, the delay in filing this response has not impacted the student's educational program or services. Therefore, it is the position of this agency that the delay in providing said response has not resulted in a denial of FAPE to the student.

Learning Disability to Multiple Disabled to include Learning Disability and Speech Language Impaired. He is currently also receiving related services in the areas of speech, clinical, specialized instruction and occupational therapy.

    4.    DCPS denies the claim of failure to provide all necessary special education and related services. As stated in my previous answer, the student is receiving twenty-seven and a half (27.5) hours per week of special education and related services. The only adjustment that was made was an additional half hour a week for speech services.

    5.    The request for a compensatory education plan is premature at this time, as there has been no showing by the parent that the student has lost services due the team not conducting the evaluation, to date; and

    6.    Attorney fees are only payable to the prevailing party and, as of the filing of the complaint, the parent has not been determined to be the prevailing party.

Date: December 1, 2006

Submitted by:

*Quinne Harris-Lindsey*/signed electronically
Quinne Harris-Lindsey, Esquire
Supervisory Attorney Advisor
c/o Ann J. Williams
Senior Paralegal Specialist
Office of the General Counsel
DC Public Schools
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002
(202) 442-5166 – direct
(202) 442-5097/8 - fax

83

## CERTIFICATE OF SERVICE

I, Quinne Harris-Lindsey, Esq., hereby certify that a copy of DCPS' Response to the

Administrative Due Process Complaint Notice was served on December 1, 2006 on Douglas

Tyrka, Tyrka & Associates, LLC, via facsimile at 202/265-4264.


*Quinne Harris-Lindsey*/signed electronically
Quinne Harris-Lindsey, Esquire
Supervisory Attorney Advisor
c/o Ann J. Williams
Senior Paralegal Specialist

84



Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5166 direct
(202) 442-5097/8 fax

# Fax

| **To:** | Douglas Tyrka | **From:** | Ann J. Williams |
|---|---|---|---|
| | Tyrka & Associates, LLC | | Senior Paralegal Specialist |
| **Fax:** | 202/265-4264 | **Date:** | December 1, 2006 |
| **Phone:** | 202/265-4260 | **Pages:** | 3 |
| **Re:** | E. H■■Response | **CC:** | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

•**Comments:**

# hp LaserJet 9050mfp series



---

| Fax Call Report | 1 |
|---|---|

DCPS Office of General Counsel
2024425098
01-Dec-2006 01:14 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| 1972 | 01-Dec-2006 01:12 PM | Send | 9265-4264 | 1:31 | 4 | Success |



Office of the General Counsel
825 North Capitol Street, NE
Room 9093
Washington, DC 20002
(202) 442-5000 main
(202) 442-5166 direct
(202) 442-5097/8 fax

# Fax

| To: | Douglas Tyrka | From: | Ann J. Williams |
|---|---|---|---|
| | Tyrka & Associates, LLC | | Senior Paralegal Specialist |
| **Fax:** | 202/265-4264 | **Date:** | December 1, 2006 |
| **Phone:** | 202/265-4260 | **Pages:** | 3 |
| **Re:** | E. H██ Response | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

86

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

|  |  |  |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
|  | ) |  |
| H▬ E.                  Petitioner | ) |  |
|  | ) | HEARING OFFICER |
| Vs. | ) |  |
|  | ) |  |
| DCPS | ) |  |
| Attending Rock Creek Academy |  |  |
|  | ) | DISTRICT OF COLUMBIA |
|  |  |  |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on **November 16, 2006**

3.  The deadline for the resolution meeting is **December 1, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

87

4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **November 26, 2006**.

C.    **_Deficiency Notice_**.    A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **December 1, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

88

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Douglas Tyrka, Esq.**
**Parent: Theresa Hart**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **November 16, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **E███ H███**
School:  **Attending Rock Creek Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

89

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘

                          TIME  : 11/16/2006 03:18
                          NAME  : STATE ENFORCEMENT
                          FAX   : 2024425253
                          TEL   :
                          SER.# : 000D6J436181

┌─────────────────────────────────────────────────────────────────┐
│  DATE,TIME              11/16  03:17                               │
│  FAX NO./NAME           92654264                                  │
│  DURATION               00:00:57                                  │
│  PAGE(S)                03                                        │
│  RESULT                 OK                                        │
│  MODE                   STANDARD                                 │
│                         ECM                                      │
└─────────────────────────────────────────────────────────────────┘
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Douglas Tyrka, Esq.**
**Parent: Theresa Hart**

Telephone Number: **(202) 265-4260**          Pages: **3**
Fax Number: **(202) 265-4264**                Date: **November 16, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: E██████ H██
School:  **Attending Rock Creek Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

90

# DUE PROCESS COMPLAINT NOTICE
## In re E███ H███
### November 16, 2006

**Petitioner:**       Theresa Hart
**Student:**          E███ H███
**DOB:**              ███795
**Current School:**   Rock Creek Academy ("RCA")
**Residence:**        1223 Holbrook Street, N.E., #3
                      Washington, DC 20002

**Petitioner's Contact Information for Special Education Purposes:**
        Tyrka & Associates, LLC
        1726 Connecticut Ave. N.W. Suite 400
        Washington, D.C.  20009
        Tel:  202-265-4260
        Fax:  202-265-4264

## Violations:

1. Failure to timely conduct current evaluations in all areas of suspected disability.
2. Failure to timely review current evaluations in all areas of suspected disability.
3. Failure to timely develop an appropriate individualized education plan ("IEP").
4. Failure to timely provide all necessary special education and related services.

## Facts:

1. On March 9, 2005, an independent functional behavioral assessment ("FBA") of E███ was completed.
2. E███'s March 9, 2005 independent FBA recommended another assessment in six months to evaluate his progress.
3. DCPS has not completed the additional assessment recommended in E███'s March 9, 2005 FBA.
4. A current FBA of E███ is warranted.
5. On April 3, 2006, RCA completed a current speech and language evaluation of E███.
6. On November 14, 2006, RCA convened a multidisciplinary team ("MDT") meeting to, *inter alia*, review the results of E███'s April 3, 2006 speech and language evaluation for the first time.
7. DCPS was invited to but did not attend the November 14, 2006 MDT meeting.
8. At the November 14, 2006 meeting:
   a) the attending members of the MDT:
      i)   reviewed the results of E███'s April 3, 2006 speech and language evaluation;
      ii)  increased the hours of speech and language services prescribed on his IEP from sixty (60) to ninety (90) minutes per week;
      iii) determined that an additional disability classification of Speech and Language Impaired ("SLI") was warranted;

91

iv) changed his current disability classification from Specific Learning Disability ("LD") to Multiply Disabled ("MD");

v) were prepared to discuss and determine E██████'s need for compensatory education services based on the results of his April 3, 2006 speech and language evaluation and the subsequent increase in services prescribed in his current IEP;

vi) could not discuss E████'s eligibility for compensatory education services for missed speech and language therapy since April 3, 2006 due to DCPS' absence;

b) the Petitioner's advocate requested that E████'s compensatory education services for missed speech and language therapy since April 3, 2006 be provided by an independent provider of the Petitioner's choosing.

9. DCPS has never:

a) discussed or determined E█████'s eligibility for compensatory education for missed speech and language therapy from April 3, 2006 to November 14, 2006;

b) developed an appropriate compensatory education plan to compensate E█████ for missed speech and language therapy from April 3, 2006 to November 14, 2006.

**Proposed resolution:**

1. DCPS to immediately fund an independent FBA of E████.

2. DCPS to immediately convene an MDT meeting to develop an appropriate compensatory education plan to compensate E████ for missed speech and language therapy from April 3, 2006 to November 14, 2006.

3. DCPS to reconvene the MDT within ten (10) days of receiving E█████'s independent FBA to:

a) review the results of this assessment;

b) revise his current IEP and behavior intervention plan as warranted;

c) develop an appropriate compensatory education plan to compensate E█████ for its failure to conduct and review a current FBA of B█████ since September 9, 2005.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that a representative of the LEA with authority to:

a. immediately fund an independent FBA of E████.

b. immediately schedule an MDT meeting to develop an appropriate compensatory education plan to compensate E████ for missed speech and language therapy from April 3, 2006 to November 14, 2006, and

c. reconvene the MDT within ten (10) days of receiving █████'s independent FBA

is a necessary attendee at any resolution meeting.

2. If this individual is not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individual is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

5.  Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

93

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     SHO

*Fax Number:*

*From:*          Douglas Tyrka

*Regarding:*     B█████ H█████

*# of pages:*    4

*Notes:*         Due Process Complaint

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.